169 P.3d 955

**STATE of Hawai'i, Respondent/Plaintiff–Appellee**

v.

**James MURRAY, Petitioner/Defendant–Appellant.**

No. 27549.

Supreme Court of Hawai'i.

Oct. 29, 2007.

4

Taryn R. Tomasa, Deputy Public Defender, for petitioner/defendant-appellant.

Brandon Paredes, Deputy Prosecuting Attorney, County of Maui, for respondent/plaintiff-appellee.

MOON, C.J., LEVINSON, ACOBA, and DUFFY, JJ.; and NAKAYAMA, J., Dissenting.

Opinion of the Court by ACOBA, J.

Petitioner/Defendant–Appellant James Murray (Petitioner) filed an application for

writ of certiorari [1] on April 27, 2007, requesting that this court review the February 6, 2007 judgment of the Intermediate Court of Appeals (the ICA), issued pursuant to its January 19, 2007 memorandum opinion [2] affirming the September 13, 2005 judgment of the family court of the second circuit (the court),[3] convicting Petitioner of Abuse of a Family or Household Member as a class C felony, HRS §§ 709–906(1) and (7) (Supp. 2006).[4]

Respondent/Plaintiff–Appellee State of Hawai'i (Respondent) did not file a memorandum in opposition.

## I.

The following matters, some verbatim, are taken from the parties' submissions and from the record.

> During motions in limine, *defense counsel stipulated to [Petitioner's] prior abuse convictions. The [court] never conducted a colloquy with [Petitioner] regarding the stipulation. Based on the stipulation, defense counsel requested that the [court] preclude the introduction of the priors. The [court] denied the defense counsel's request*[.]

1. Pursuant to Hawai'i Revised Statutes (HRS) § 602–59 (Supp.2006), a party may appeal the decision and judgment of the intermediate appellate court (the ICA) only by an application to this court for a writ of certiorari. *See* HRS § 602–59(a). In determining whether to accept or reject the application for writ of certiorari, this court reviews the ICA decision for:
 (1) Grave errors of law or of fact; or
 (2) Obvious inconsistencies in the decision of the [ICA] with that of the supreme court, federal decisions, or its own decision,
 and the magnitude of such errors or inconsistencies dictating the need for further appeal. HRS § 602–59(b). The grant or denial of a petition for certiorari is discretionary with this court. *See* HRS § 602–59(a).

2. The memorandum opinion was issued by Chief Judge James S. Burns and Associate Judges Corinne K.A. Watanabe and Alexa D. Fujise.

3. The Honorable Reinette W. Cooper presided. The court sentenced Petitioner to probation for five years and to pay a $150 Probation Service Fee, a $105 Criminal Injuries Compensation Fee, and $500 or the actual costs of DNA analysis, whichever is less. As a special condition of probation, Petitioner was ordered to serve a six-month term of imprisonment; however, five

. . .

> On the first day of evidence, *[Respondent] read the stipulation into evidence. The [court] did not instruct the jury with a limiting instruction either before or after the introduction of the stipulation.*
>
> Jennifer Murray [ (Jennifer) ], [Petitioner's] estranged wife, testified that on' the date of the incident, she and [Petitioner] were living separately.... [Petitioner] arrived at Jennifer's residence and demanded to see their daughter.... [Petitioner] pushed her causing Jennifer to fly forward but she did not fall. Jennifer did not feel pain from the push.
>
> ... Jennifer testified that [Petitioner] pushed her a second time. The second shove hurt Jennifer and she got upset. From behind, [Petitioner] grabbed Jennifer and caused scratches to her chest, redness, and red marks. Jennifer also testified that her right upper arm/shoulder hurt although there were no visible injuries. Later, a police officer arrived at the house and photographed scratch marks on Jennifer's right lower collar bone.

(Emphases added). Thereafter,

[a]n Amended Complaint filed on February 9, 2005 charged [Petitioner] with violating

months were suspended if Petitioner abided by the terms and conditions of probation, the remaining thirty days to be served on 15 consecutive weekends.

4. HRS §§ 709–906(1) and (7) state as follows:

 Abuse of family or household members; penalty. (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.

 For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.
 . . . .
 (7) For a third or any subsequent offense that occurs within two years of a second or subsequent conviction, the person shall be charged with a class C felony.

HRS § 709–906 by causing physical abuse to his wife, [Jennifer], on or about January 18, 2005, "within two (2) years of a second or subsequent conviction of Abuse of Family or Household Member."

However, "*[d]uring the charge to the jury, the [court] failed to instruct the jury with a limiting instruction regarding [Petitioner's] prior convictions. . . .*" (Emphasis added).

## II.

Petitioner raises the following questions in his application:

1. Whether the ICA gravely erred in holding that where a violation of HRS § 709–906 is charged as a felony offense, the prior convictions constitute an element of the offense.

2. Whether the ICA gravely erred in holding that defense counsel's stipulation to an element of the offense constituted a tactical decision that can be made solely by counsel and, thus, that it did not require a knowing, intelligent, or voluntary waiver by the defendant of his right to have that element proven to a jury beyond a reasonable doubt.

3. Whether the ICA gravely erred in holding that the trial court's failure to instruct the jury with a limiting instruction regarding the defendant's prior convictions did not constitute reversible error.

(Brackets omitted.)

## III.

As to the first question, Petitioner argues "[t]he offense of felony [a]buse is a recidivist statute where the prior convictions are extrinsic sentencing factors determined by the trial court" as opposed to a "status offense" where "the prior conviction is an element of the offense[,]" because (1) "the statute refers to the prior convictions in the penalty subsection of the statute, separate and apart from the definition of the offense[,]" (2) "[t]he legislature specifically stated that the amendments were to 'clarify *sentencing provi-*

*sions*[,]' not to add an element to the felony offense, *see* . . . Stand. Com. Rep. No. 1268 (2003) (emphasis added)[,]" and (3) "[t]he difference between HRS §§ 709–906(7) and 291E–61(b)(1)(4) [as construed in *State v. Domingues*, 106 Hawai'i 480, 107 P.3d 409 (2005), is that] HRS § 709–906(7) provides that 'for a third or subsequent offense that occurs within two years of a second or subsequent conviction, the person shall be *charged* with a Class C felony' (emphasis added) [and i]n contrast, the prefatory language of HRS § 291E–61(b)(1)(4) stated that the individual 'shall be sentenced.'"

In its answering brief, Respondent correspondingly argued that prior convictions constituted elements because (1) "[t]o be convicted under subsection (7) [of HRS § 709–906], a defendant must have committed 'a third or any subsequent offense that occurs within two years of a second or subsequent conviction[']. . . [which] describes an attendant circumstance—an essential element—that [Respondent] needs to prove beyond a reasonable doubt[,]" (2) as in *Domingues*, "the prefatory language in HRS § 709–906(5)(a) and (b) and HRS § 709–906(7) describe attendant circumstances that are intrinsic to and enmeshed in the hierarchy of offenses that HRS § 709–906 . . . describes [and, a]s such, . . . the essential element that [Respondent must prove was that Petitioner] committed the instant abuse within two years of a second or subsequent conviction[,]" (3) "[i]n 1998, . . . [in] the creation of a felony abuse offense[,] . . . the legislature stated that . . . '*an enhanced grade of offense for repeat criminal behavior sends a message to the repeat offender . . . and will be treated as a serious offense*[,]' Sen. Stand. Comm. Rep. No. 3252, in 1998 Senate Journal, at 1314 (emphasis added)," (4) in 2002, the legislature, in amending subsection (7) to read, "[f]or a third or any subsequent offense . . . that occurs within two years[,]" said that "[t]his measure . . . limit[s] misdemeanors to the first and second offense, while making it a class C felony for any third and subsequent offense."[5]

---

**5.** In reply, Petitioner argued (1) "[t]he inclusion of the priors in a complaint or information does not . . . make proof of the prior convictions elements [sic] of the offense[,]" (2) "[b]oth HRS

§ 706–605.5, sentencing of repeat offenders, and HRS § 706–662(1), (3), and (4), extended term sentencing[,] categorized prior convictions as extrinsic sentencing factors for a judge to deter-

## IV.

With reference to the first question, the ICA held "the fact that [Petitioner] committed his crime 'within two (2) years of a second or subsequent conviction of Abuse of Family or Household Member' is an 'intrinsic fact' that must be determined by the jury[,]" and (2) "[a] stipulation of that fact does not violate the defendant's due process rights by impermissibly lessening the prosecution's burden to prove that material element[, t]herefore, it is a tactical decision permissibly made by counsel for the defendant."

## V.

On February 9, 2005, Respondent charged Petitioner by complaint as follows:

That on or about the 18th day of January, 2005, in the County of Maui, State of Hawaii, JAMES MURRAY within two (2) years of a second or subsequent conviction of Abuse of Family or Household Member in violation of Section 709–906 of the Hawaii Revised Statutes, did intentionally, knowingly or recklessly engage in and cause physical abuse of a family or household member, to wit Jennifer Murray, thereby committing the offense Felony Abuse of Family or Household Member in violation of Section 709–906(7) of the Hawaii Revised Statutes.

HRS § 709–906 (Supp.2004) states in pertinent part:

(1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member.

. . .

. . . .

(5) Abuse of a family or household member and refusal to comply with the lawful

order of a police officer under subsection (4) are misdemeanors and the person shall be sentenced as follows:

(a) For the first offense the person shall serve a minimum jail sentence of forty-eight hours; and

(b) For a second offense that occurs within one year of the first conviction, the person shall be termed a 'repeat offender' and serve a minimum jail sentence of thirty days.

. . . .

(7) *For a third or any subsequent offense that occurs within two years of a second or subsequent conviction,* the person shall be charged with a class C felony.

(Emphasis added).

## A.

 Under HRS § 709–906 the prosecution would need to prove first that Petitioner "physically abuse[d] a family or household member" in violation of HRS § 709–906(1) and second that the violation was Petitioner's "third or any subsequent offense that occur[ed] within two years of a second or subsequent conviction ..." in violation of HRS § 709–906(7) as was charged in the complaint. HRS § 702–205 (1993) states:

The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

(a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

Conduct is defined in HRS § 701–118(4) (1993) as "an act or omission, or, where

mine[,] *State v. White,* 110 Hawai'i 79, 129 P.3d 1107 (2006); *cf. Apprendi v. New Jersey,* 530 U.S. 466, 120 S.C.[S.Ct.] 2348, 147 L.Ed.2d 435 (2000)[,]" (3) in contrast to the DUI statute in *Domingues* and *State v. Kekuewa,* 112 Hawai'i 269, 145 P.3d 812 (App.2006), *vacated in part by* 114 Hawai'i 411, 163 P.3d 1148 (2007), "the distinction between 'shall be *charged*' in HRS § 706–906(7) and 'shall be *sentenced*' in HRS §§ 291E–61(b)(1)–(b)(4) and 709–906(5) is significant because the due process issue noted in *Domingues* is met [u]nder HRS § 709–906(7), [because] at the time of charging, the State has

already elected the grade of offense[, w]hereas, in HRS §§ 291E–61(b)(1)–(b)(4) and 709–906(5), the trier of fact has to make the determination as to ... grade of offense[,]" and (4) "[t]he legislature ... amended HRS § 709–906 in 2002 ... [and] specifically stated that the amendments were to 'clarify *sentencing provisions*' not to add an element to the felony offense[,] *[s]ee* A Bill for an Act Relating to Chapter 291E, H.B. No. 807, H.D. 2, S.D. 1, Committee on Judiciary and Hawaiian Affairs, 22nd State Legislature, Regular Sess., Stand. Com. Rep. No. 1268 (2003) (emphasis added)."

relevant, a series of acts or a series of omissions, or a series of acts and omissions[.]" Furthermore, an act is defined under § 701–118(2) (1993) as a "bodily movement whether voluntary or involuntary[.]" Based on the foregoing definitions, the requisite conduct constituting a violation of HRS § 709–906 is some physical bodily movement. The requisite result of such conduct is physical abuse. The requisite attendant circumstances are that the object of the abuse has the attributes of a person who is a family or household member of the defendant.

Although the Hawai'i Penal Code does not define the term "attendant circumstances," in *State v. Aiwohi*, 109 Hawai'i 115, 127, 123 P.3d 1210, 1222 (2005), this court stated that "[a]ny circumstances defined in an offense that are neither conduct nor the results of conduct would, by default, constitute attendant circumstances elements of the offense." (Quoting *State v. Moser*, 107 Hawai'i 159, 172, 111 P.3d 54, 67 (2005).) (Brackets in original.). Thus, by default, whether Petitioner's violation of the statute "was a third or any subsequent offense" is also an attendant circumstance of class C felony abuse. Based on the definition of attendant circumstances set forth in *Aiwohi*, a plain reading of HRS § 709–906 supports the conclusion HRS § 709–906(7) is an attendant circumstance.

Additionally, in the foregoing subsections of HRS § 709–906, the degree of punishment escalates depending on whether the violation is a first offense, second offense, or third or any subsequent offense that occurs within two years of a second or subsequent conviction. This court has stated that when "the degree of punishment for a violation ... escalates as a function of whether the violation" was committed within a certain number of years of a prior offense, such language "describes attendant circumstances that are intrinsic to and enmeshed in the hierarchy of offenses that [the statute] as a whole describes." *Domingues*, 106 Hawai'i at 487, 107 P.3d at 416 (internal quotation marks and citation omitted); *see also State v. Ruggiero*, 114 Hawai'i 227, 238, 160 P.3d 703, 714 (2007). *Domingues* further stated that such aggravating circumstances must be alleged in

the charging instrument and determined by the trier of fact.

[Aggravating circumstances] ... *intrinsic* to the commission of the crime charged ... must be alleged in the [charging instrument] in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact.

*Domingues*, 106 Hawai'i at 487–88, 107 P.3d at 416–17 (citation omitted) (internal quotation marks omitted) (some brackets in original); *see also Ruggiero*, 114 Hawai'i at 238, 160 P.3d at 714.

### B.

Also, "[whether the offense] was a third or any subsequent offense that occur[red] within two years of a second or subsequent conviction" defines the felony offense of HRS § 709–906(7) as opposed to the misdemeanor offenses set forth in § 709–906(5)(a) and (b). By reason of the express language of subsection 7, the particular offense charged includes the words describing the class C felony version of abuse. HRS § 709–906(7). Hence, the foregoing reference to a prior conviction set forth in HRS § 709–906(7) is "specified by the definition of the offense[.]" *See* HRS § 702–205.

The legislative history of HRS § 709–906 supports the conclusion that HRS § 709–906(7) defines a felony offense. Previously, in 1998, HRS § 709–906 was amended to include subsection (7) as follows: "(7) For any subsequent offense occurring within two years after a second misdemeanor conviction, the person shall be charged with a class C felony." 1998 Haw. Sess. L. Act 172, § 8 at 647. At that point the legislature stated that *"an enhanced grade of offense* for repeat criminal behavior sends a message to the repeat offender that such behavior will not be tolerated and will be treated as a *serious offense."* Sen. Stand. Comm. Rep. No. 3252, in 1998 Senate Journal, at 1315 (emphases added).

In 2002, HRS § 709–906(7) itself was amended to read, "(7) For *a third or* any subsequent offense that occurs within two years of a second or subsequent conviction,

the person shall be charged with a class C felony." 2002 Haw. Sess. L. Act 5, § 1 at 54 (emphasis added). The legislature stated that the 2002 amendment "limit[ed] misdemeanors to the first and second offense, while making it a class C felony for any third and subsequent offense." Stand. Comm. Rep. No. 2949, in 2002 Senate Journal, at 1418.[6]

Thus, proof that the offense was Petitioner's third or subsequent offense is an attendant circumstance which "negative[s] a defense[.]" HRS § 702-205(b). Arguably, a defense to a charge that Petitioner committed a class C felony offense would be that the offense was not Petitioner's "third or any subsequent offense that occur[ed] within two years of a second or subsequent conviction[.]" HRS § 709-906(7). In order for the prosecution to negate Petitioner's potential defense against the offense constituting a felony violation of HRS § 709-906, the prosecution must prove at least two prior convictions, and that the offense occurred within two years of the second or subsequent offense. Thus, pursuant to the definition of "element" set forth in HRS § 702-205, the prior conviction reference in HRS § 709-906(7) constitutes an element of the offense of the abuse charge.

## VI.

### A.

As to the second question, Petitioner argues (1) "[f]undamental rights, such as [Respondent's] burden to prove each element of the offense beyond a reasonable doubt, cannot be waived or stipulated to by defense counsel[; o]nly the accused can knowingly, intelligently, and voluntarily waive a fundamental right[,]" (2) "[d]efense counsel cannot stipulate to matters that go beyond tactical and procedural matters[,] *State v. Casey,* 51 Haw. 99, 451 P.2d 806 (1969)[,]" (3) "*Ferguson v. State,* 362 Ark. 547, 210 S.W.3d 53 (2005), and ... *United States v. Perry,* 46

F.3d 1128 (4th Cir.1995) [ (unpublished) ], both held that" failure to conduct a colloquy to establish that the defendant's stipulation to an element of the offense was "knowingly and voluntarily entered" by the defendant was error, and (4) the same "error cannot be considered harmless [here] because the [court] instructed the jury that the stipulation was conclusively proven, and the jury had to accept this evidence in order to find [Petitioner] guilty." [7]

In response, Respondent had correspondingly said (1) "[Petitioner] waived this issue by failing to object, invited error, and [Petitioner] should be judicially estopped from raising this issue[,]" (citing *State v. Adler,* 108 Hawai'i 169, 175, 118 P.3d 652, 658 (2005)), (2) "[e]ven if not deemed waived, [Petitioner's] substantial rights were not adversely affected[,] ... the burden still rested upon [Respondent] to prove each and every element beyond a reasonable doubt at trial."

In reply, Petitioner maintains (1) "[Petitioner] did not invite the error and he is not raising inconsistent positions[,]" (2) "[Petitioner] should not be estopped from raising the issue because it was the [court's] duty to ensure that the waiver of his constitutional right to a jury trial was done intelligently, knowingly, and voluntarily[,]" (3) "the relinquishment of a fundamental right must be done by the beneficiary[, s]ee ... *State v. Young,* 73 Haw. 217, 222, 830 P.2d 512, 515 (1992)[,]" (4) "[c]ontrary to [Respondent's] contention that 'the stipulation did not conclusively prove the entire element,' the [court] instructed the jury[, '*Y]ou must accept as conclusively proved* any fact to which the parties have stipulated.' " (Emphasis added and brackets omitted.)

### B.

With respect to these foregoing issues, the ICA framed "the ... question [as] whether an 'instructional error' occurred when the court did not instruct the jury that it could

---

6. In 2006, the legislature further amended HRS § 709-906(7) to provide that "[f]or a third or any subsequent offense that occurs within two years of a second or subsequent conviction, the offense shall be a class C felony." 2006 Haw. Sess. L. Act 230, § 46 at 1022.

7. The court instructed the jury in pertinent part that, "Five: You must accept as conclusively proved any fact to which the parties have stipulated."

not consider the fact that the alleged offense occurred within two years ... when deciding ... the other elements of the alleged offense." The ICA briefly stated that "an 'instructional error' did not occur."

## VII.

As to Petitioner's second question, pursuant to HRS § 701–114, the prosecution has the burden of proving each element beyond a reasonable doubt. "Where a prior conviction is an essential element of the offense charged, proof of the prior conviction is an exception to the general rule that evidence of the commission of other crimes is inadmissible." *State v. Buffalo,* 4 Haw.App. 646, 648, 674 P.2d 1014, 1017 (1983) (citations omitted), *abrogated on other grounds by State v. Sanchez,* 82 Hawai'i 517, 923 P.2d 934 (App.1996). Additionally, "[t]he prosecution must prove the prior conviction beyond a reasonable doubt, generally by the introduction of the record of conviction." *Id.* (citations omitted).

The defendant's right to have each element of an offense proven beyond a reasonable doubt is a constitutionally and statutorily [8] protected right. *See State v. Maelega,* 80 Hawai'i 172, 178, 907 P.2d 758, 764 (1995) (jury instruction erroneous because it impermissibly shifted the burden of proof to defendant to prove his affirmative defense *before* the prosecution was required to prove every element of the charged crime beyond a reasonable doubt in violation of the due process clauses of the fourteenth amendment to the United States Constitution and article I, section 5 of the Hawai'i Constitution (citing *State v. Pone,* 78 Hawai'i 262, 274, 892 P.2d 455, 467 (1995))); *State v. Lima,* 64 Haw. 470, 474, 643 P.2d 536, 539 (1982) ("It is well established, as a precept of constitutional as well as statutory law, that an accused in a criminal case can only be convicted upon proof by the prosecution of every element of the crime charged beyond a reasonable doubt." (Citing *State v. Nuetzel,* 61 Haw.

531, 606 P.2d 920 (1980). (Other citations omitted.))); *State v. Iosefa,* 77 Hawai'i 177, 182, 880 P.2d 1224, 1229 (App.1994) ("It is also well-settled that the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution protects an accused against a conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " (Quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).)). In the instant case, Petitioner's right to have all elements of an offense proven beyond a reasonable doubt is statutorily protected under HRS § 701–114, and constitutionally protected under the State and federal constitutions.

## A.

Waiver of a defendant's fundamental rights must be knowing and voluntary, and must come directly from the defendant. *State v. Ibuos,* 75 Haw. 118, 121, 857 P.2d 576, 578 (1993) ("A knowing and voluntary waiver of the right to trial by jury must come directly from a defendant, either in writing or orally."). In *Ibuos,* the defendant was charged under a previous version of the same abuse statute as Petitioner. *Id.* at 118, 857 P.2d at 577. At Ibuos's arraignment and hearing plea, his counsel waived his right to a jury trial. *Id.* at 119, 857 P.2d at 577. Following a bench trial and conviction, Ibuos appealed on grounds that such waiver by his counsel violated his "right to a trial by jury under the sixth amendment to the United States Constitution and article I, section 14 of the Hawaii Constitution." *Id.* at 121, 857 P.2d at 578. The *Ibuos* court stated that:

Hawaii Rules of Penal Procedure (HRPP) Rule 5(b)(1) requires that "the court shall in appropriate cases inform the defendant that he has a right to [a] jury trial in the circuit court or may elect to be tried without a jury in the district court." "Appropriate cases" arise whenever the accused has a constitutional right to a jury tri-

8. HRS § 701-114 (1993) states as follows:
 (1) Except as otherwise provided in section 701-115, no person may be convicted of an offense unless the following *are proved beyond a reasonable doubt:*

 (a) *Each element of the offense[.]*
(Emphases added).

al. . . . In Hawaii, a statutory right to a jury trial arises whenever a criminal defendant can be imprisoned for six months or more upon conviction of the offense. HRS § 806–60. Because a person convicted of the offense of Abuse of a Family or Household Member, a misdemeanor, may be imprisoned for up to one year, (see HRS § 706–663 (Supp.1992)), *the court had a duty to inform Ibuos of his right to trial by jury in order to ensure a knowing and voluntary waiver of that right. Failure to obtain a valid waiver of Ibuos's fundamental right constitutes reversible error.* *Id.* at 120, 857 P.2d at 577 (emphasis added) (internal citations and footnote omitted).

As recounted above, the *Ibuos* court stated that a knowing and voluntary waiver of a defendant's fundamental right must come directly from the defendant, and requires the court to engage in a colloquy with the defendant. *Id.* at 121, 857 P.2d at 578. *Ibuos* noted that "[b]ecause the record is silent as to any colloquy between the court and defendant, counsel's waiver of her client's right . . . was, therefore, invalid[.]" *Id.* at 121, 857 P.2d at 578.

Similarly, *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293 (1995), held that a defendant's constitutional rights may not be waived by counsel. In that case the defense team decided as a tactical matter that it would be best that Tachibana not be called as a witness despite his frequently expressed desire to testify. *Id.* at 229, 900 P.2d at 1296. However, this court stated that "[a] defendant's right to testify in his or her own defense is guaranteed by the constitutions of the United States and Hawai'i and by a Hawai'i statute[,]" *id.* at 231, 900 P.2d at 1298 (alteration omitted) (quoting *State v. Silva*, 78 Hawai'i 115, 122, 890 P.2d 702, 709 (App.1995)), and " 'a *defendant's personal constitutional right to testify truthfully in his or her own behalf may not be waived by counsel as a matter of trial strategy*[.]" *Id.* at 232, 900 P.2d at 1299 (quoting *United States v. Moody*, 977 F.2d 1425, 1431 (11th Cir.1992) (other citation omitted)).

*Tachibana* determined that the trial court must engage in an on-the-record colloquy to ensure that the defendant knowingly and voluntarily waived his constitutional right to testify. *Id.* at 235, 900 P.2d at 1302. Before reaching this conclusion, this court stated that courts throughout the country have looked at three approaches when defendants claim that their attorneys have deprived them of their constitutionally protected right to testify. *Id.* at 233, 900 P.2d at 1300 (citing *Boyd v. United States*, 586 A.2d 670 (D.C.App.1991)).

One approach would require the trial court to engage in an on-the-record colloquy with every defendant to ensure a defendant's right is knowing and voluntarily waived. *Id.* Other courts have adopted the "demand rule," holding that a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right. *Id.* The "demand rule" has been justified in two ways. Some courts find that the right to testify is not a fundamental right and other courts presume that a defendant has knowledge of the right to testify, having been educated of such a right "by television and past courtroom experience[.]" *Id.* (quoting *United States v. Martinez*, 883 F.2d 750, 761 (9th Cir.1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir.1991), *cert. denied*, 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991)). A third group of courts hold that a trial judge need not question the defendant at trial *sua sponte*, but the defendant may bring a post-conviction challenge based on the denial of his right to testify. *Id.*

The *Tachibana* court adopted the colloquy approach on the ground that it would "best protect defendants' rights while maintaining the integrity of the criminal justice system." *Id.* at 234, 900 P.2d at 1301. Additionally, it was determined that the colloquy approach promotes judicial efficiency:

> *[B]y engaging in the colloquy, a trial judge would establish a record that would effectively settle the right-to-testify issues in the case, and thereby relieve the trial judge of extended post-conviction proceedings. If the trial court does not establish on the record that the defendant understands and knowingly waives his [or her] right to testify, it is difficult to establish [after trial] whether such a waiver occurred.* Thus, many defendants would be

able to raise colorable claims that their right to testify had been violated. *Hence, as a practical matter, courts would be forced to inform defendants of the right to testify so as to avoid a post-hoc invalidation of the entire trial. Thus, the administrative burden of the colloquy requirement on the trial judge, as well as the appellate court, would in all likelihood be much less than the burden under the post-trial challenge method ... [and] would best serve ... the interests of all parties in the administration of justice.*

*Id.* at 235, 900 P.2d at 1302 (emphases added) (citation and quotation marks omitted). This court ultimately concluded that a colloquy best protects defendant's constitutional rights. *Id.* at 236, 900 P.2d at 1303 ("Thus, we hold that in order to protect the right to testify under the Hawaiʻi Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify.") (footnotes omitted). *See also State v. Lewis,* 94 Hawaiʻi 292, 294–95, 12 P.3d 1233, 1235–36 (2000) (explaining that where a defendant chooses to testify, the court is not required under the Hawaiʻi Constitution to hold a colloquy advising him of right to testify, but, prior to start of trial, the court must inform defendant of right to testify or not to testify, and that if defendant chooses not to testify the court will question defendant to ensure that decision is his or her own decision).

In concluding that the trial court is required to engage in a colloquy with the defendant, *Tachibana* noted that the trial court is mandated to engage in such colloquies with criminal defendants regarding waiver of other fundamental rights, and therefore, there was no reason why colloquies regarding the right to testify should be any different:

*Moreover, the trial courts in this state are already required to engage in on-the-record colloquies with criminal defendants when the waiver of other fundamental rights are at issue. See, e.g., State v. Kupau,* 76 Hawaiʻi 387, 395–96 n. 13, 879 P.2d 492, 500–01 n. 13 (1994) (right to included offense instructions); *State v. Ibuos,* 75 Haw. 118, 121, 857 P.2d 576, 578 (1993) (right to trial by jury); *State v. Vares,* 71 Haw. 617, 622–23, 801 P.2d 555, 558 (1990) (right to counsel); *Conner v. State,* 9 Haw.App. 122, 126, 826 P.2d 440, 442–43 (1992) (right to have guilt proved beyond a reasonable doubt (i.e., entry of guilty plea)).... *[T]here does not appear to be any reason why colloquies regarding the right to testify should be any different.*

*Id.* at 235–36, 900 P.2d at 1302–03 (emphases added).

### B.

■ As a general principle, then, *Ibuos* and *Tachibana* prohibit the waiver of a defendant's fundamental right without the trial court first engaging in a personal on-the-record colloquy with the defendant to ensure such rights are voluntarily and knowingly waived. Those cases indicate that a colloquy between the trial court and defendant is the best way to ensure that a defendant's constitutional right such as waiver of proof of an element is protected, and that the defendant has knowingly and voluntarily waived such a right. In that light, the colloquy approach also best promotes judicial efficiency by establishing on the record that the defendant has voluntarily waived an element of the offense. Without such a record it is difficult to determine whether the defendant personally waived such a right. As exemplified in *Tachibana,* the trial court, by engaging in a colloquy with the defendant, would prevent or reduce post-trial challenges. Additionally, trial courts are already required to engage in colloquies with defendants regarding the waiver of other fundamental rights as noted in *Tachibana* and consistent with this practice, the trial court must conduct a colloquy regarding waiver of proof of an element of the offense.

### VIII.

*Ferguson* is also instructive on the issue of mandatory colloquies. In that case the defendant was charged with, *inter alia,* possession of firearms by a convicted felon. 210 S.W.3d at 54. The prosecution sought to introduce the record of his previous felony assault conviction. *Id.* The defendant filed a motion in limine offering to stipulate that he

fell into the class of individuals prohibited from owning a firearm and that the "State be prohibited from introducing the specific details of the felony." *Id.* The court denied the motion and a certified copy of the conviction was submitted into evidence. *Id.* Following conviction, the defendant appealed and his conviction was overturned by the Arkansas Court of Appeals. *Id.* The State filed petition for review. *Id.* The Supreme Court of Arkansas reviewed the issue of "whether a defendant can stipulate or admit to his status as a member of the class of individuals not allowed to possess a firearm and prohibit the State from introducing evidence detailing the nature of the conviction." *Id.*

That court determined that a defendant could stipulate to the element of a prior felony conviction provided that the court engage in an on-the-record colloquy with the defendant acknowledging the prior felony conviction and acceding to the stipulation.

> [W]hen a criminal defendant offers to stipulate or admit to the convicted-felon element of the felon-in-possession-of-a-firearm charge, the circuit court must accept that stipulation or admission, conditioned by an on-the-record colloquy with the defendant acknowledging the underlying prior felony conviction and acceding to the stipulation or admission.

*Id.* at 57 (citing *Brown v. State*, 719 So.2d 882, 884 (Fla.1998)). Under *Tachibana* the same rationale would apply to the stipulation here.

### IX.

■■ Although stipulations are ordinarily binding, "[a] stipulation in and of itself may be set aside if it was made inadvertently, unadvisedly or improvidently and will operate inequitably and to the prejudice of one of the parties, provided all . . . parties may be placed in the condition in which they were before the stipulation was made." *In re Doe*, 90 Hawai'i 200, 211, 978 P.2d 166, 177 (App. 1999) (citing *State v. Foster*, 44 Haw. 403, 423, 354 P.2d 960, 971 (1960)) (internal quotations and other citations omitted) (ellipsis in original). Here, the ICA determined that a stipulation by Petitioner's defense counsel of the fact that Petitioner committed his crime

within two years of a second or prior conviction of abuse did not violate Petitioner's due process rights. However, as noted *supra*, Petitioner's fundamental rights could not be waived or stipulated to by his counsel; only Petitioner personally could have waived such rights. Thus the stipulation must be deemed invalid.

### X.

Respondent contends that Petitioner waived the foregoing issue by failing to object. Under similar circumstances, in *Tachibana*, the prosecution contended that it would be an absurdity to allow Tachibana another trial based on his claim that his right to testify had been violated by the unilateral action of his attorney. *Tachibana*, 79 Hawai'i at 232–33, 900 P.2d at 1299–300. This court rejected the approach used by courts that refuse to entertain post-trial challenges based on the right to testify. *Id.* at 234, 900 P.2d at 1301. It explained that defendants are often unaware that they have certain constitutional rights that may not be waived by their counsel or that they must object to waiver by counsel at trial. *Id.* The *Tachibana* court stated:

> *Many defendants are unaware that they have a constitutional right to testify which no one, not even their lawyer, may take away from them.*
>
> . . . .
>
> [*T*]*he defendant . . . may not know that an objection must be made during trial or that right is forever lost.* Further, in *Johnson v. Zerbst* the Court was unwilling to "presume acquiescence in the loss of fundamental rights." 304 U.S. at 464, 58 S.Ct. at 1023. In sum, the demand rule requires a defendant to assert a right of which the defendant may not be aware by objecting in a manner the defendant has been told is inappropriate. We decline to adopt a rule which places such burdens on the exercise of a fundamental constitutional right.

*Id.* (emphases added) (citation and quotation marks omitted). Similarly, with respect to the waiver of proof of an element, many defendants may not know that they have a

right to have all elements proven beyond a reasonable doubt or that an objection with respect to waiver or stipulation of an element by defense counsel must be objected to during trial or the right to object may be lost.

Second, Respondent contends that Petitioner's failure to object invited error and thus Petitioner should be judicially estopped from raising the issue. However, the *Ibuos* court refused to consider the "invited error doctrine," choosing instead to follow *State v. Smith*, 68 Haw. 304, 313–14, 712 P.2d 496, 502 (1986) relating that "[t]he court in *Smith* . . . rejected the 'invited error doctrine' where the result would deprive a defendant of a constitutional right. We similarly refuse to consider the 'invited error doctrine' in this instance." *Ibuos*, 75 Haw. at 122, 857 P.2d at 578 (internal citation omitted). Similarly, in the instant case, Respondent's position would deprive Petitioner of a constitutional right, rendering the invited error doctrine inapplicable.

Third, Respondent contends that even if the proof of the element is not deemed waived, Petitioner's substantial rights were not adversely affected because Respondent

had the burden of proving each element of the offense beyond a reasonable doubt. However, the court instructed that jury that it "must accept as conclusively proved any fact to which the parties have stipulated." In essence, the stipulation satisfied Respondent's burden of proving an element beyond a reasonable doubt. A colloquy would have ensured that the defendant understood that a stipulation to his prior convictions amounted to satisfying Respondent's burden of proving an element of the offense beyond a reasonable doubt.

## XI.

■■■ Because, as indicated *supra*, the court did not engage Petitioner in a colloquy regarding waiving proof of an element of the charge, the judgment must be vacated and the case remanded for a new trial. In that circumstance we discuss Petitioner's argument, in conjunction with the first question, that the jury should not have been informed of the stipulation and his third question regarding limiting instructions because they are relevant to a new trial.[9]

9. Respondent contends that because Petitioner failed to request a limiting instruction, Petitioner waived the issue and should be judicially estopped from raising it. Under the disposition proposed, this matter need not be decided.

It may be noted, however, that this court has held that "[a]s a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error." *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citing *State v. Pinero*, 75 Haw. 282, 291–92, 859 P.2d 1369, 1374 (1993)) Plain error exists where "the substantial rights of the defendant have been affected adversely[.]" *Id.; see also* HRPP Rule 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *Sanchez*, 82 Hawai'i at 524–25, 923 P.2d at 941–42 (" '[W]here plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court.' " (Quoting *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 75 (1993).)); *State v. Kinnane*, 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995) ("[I]t may be plain error for a trial court to fail to give an . . . instruction even when neither the prosecution nor the defendant have requested it . . . because . . . the ultimate responsibility properly to instruct the jury lies with the circuit court and not with trial counsel." (Internal quotation

marks and citations omitted.) (Emphasis omitted.)).

In order to determine whether a defendant's substantial rights have been affected the court must determine "whether there is a reasonable possibility that the error might have contributed to conviction." *State v. Gonsalves*, 108 Hawai'i 289, 293, 119 P.3d 597, 601 (2005) (internal quotation marks and citations omitted).

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. *Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.* [However, e]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. *In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.* *Id.* at 292–93, 119 P.3d at 600–01 (internal citations, quotation marks, indentations, and para-

## A.

In conjunction with Petitioner's objection to the submission of the stipulation to the jury, Petitioner argues (1) "[a]ssuming *arguendo* that [Petitioner's] prior convictions constituted elements of the offense, the [court] . . . erred in submitting the priors to the jury because they had been already stipulated to[ and thus, they were] . . . irrelevant [and] overly prejudicial[,] . . . [under] Rules 402, 403 of the Hawai'i Rules of Evidence," (2) "[i]n *Old Chief v. United States*, 519 U.S. 172[, 117 S.Ct. 644, 136 L.Ed.2d 574] (1997), . . . [t]he Court reasoned that because a status element of an offense is independent of an offense's mental and physical requirements, it was not necessary that a jury be informed of a status element[,]" and (3) "many jurisdictions have similarly held that criminal defendants can stipulate to prior convictions for the purpose of keeping such prejudicial evidence from the jury."

## B.

*Old Chief* considered whether a defendant can stipulate to prior convictions, as opposed to the government proving the element by introducing a record or judgment or other similar evidence. In *Old Chief*, the subject "statute ma[de] it unlawful for anyone 'who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year' to 'possess in or affecting commerce, any firearm[.]'" 519 U.S. at 174, 117 S.Ct. 644 (quoting 18 U.S.C. 922(g)(1)). The Court noted that "[t]he earlier crime charged in the indictment against Old Chief was assault causing serious bodily injury." *Id.* at 175, 117 S.Ct. 644. Defendant

> moved for an order requiring the Government "to refrain from mentioning [the prior conviction] . . ., *except* to state that the Defendant ha[d] been convicted of a crime punishable by imprisonment exceeding one (1) year." . . . [H]e offered to "solve the problem here by stipulating . . . [to the fact] that he has been convicted of a crime punishable by imprisonment exceeding one (1) year." He argued that the offer to stipulate to the fact of the prior conviction

graphing omitted); *see also, State v. Shinyama,*

rendered evidence of the name and nature of the offense inadmissible under Rule 403 of the Federal Rules of Evidence, the danger being that unfair prejudice from that evidence would substantially outweigh its probative value.

*Id.* (internal citations omitted) (emphasis in original). The question as posed by the Court was as follows:

> Subject to certain limitations, 18 U.S.C. § 922(g)(1) prohibits possession of a firearm by anyone with a prior felony conviction, which the Government can prove by introducing a record of judgment or similar evidence identifying the previous offense. *Fearing prejudice if the jury learns the nature of the earlier crime, defendants sometimes seek to avoid such an informative disclosure by offering to concede the fact of the prior conviction. The issue here is whether a district court abuses its discretion if it spurns such an offer and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction. We hold that it does.*

*Id.* at 174, 117 S.Ct. 644 (emphasis added) (footnote omitted).

The United States Supreme Court recognized the potential prejudice of submitting evidence of the name or nature of the prior offense. *Id.* at 185, 117 S.Ct. 644 (stating that "there can be no question that evidence of the *name or nature* of the prior offense generally carries a risk of unfair prejudice to the defendant[ ]") (emphasis added). For this reason, it was determined that the defendant's admission that he was included in the category of persons covered by the statute would have amounted to conclusive evidence of the element and the Court noted that the statutory language of the prior-conviction requirement "show[ed] no congressional concern with the specific name or nature of the prior offense beyond what is necessary to place it within the broad category of qualifying felonies[.]" *Id.* at 186, 117 S.Ct. 644. Further, the Supreme Court stated that the

101 Hawai'i 389, 395, 69 P.3d 517, 523 (2003).

defendant "clearly meant to admit that his felony did qualify, by stipulating that the Government [had] proven one of the essential elements of the offense." *Id.* 186, 117 S.Ct. 644 (internal quotation marks and citation omitted).

The Court explained that "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions." *Id.* at 190–91, 117 S.Ct. 644. Thus, the Supreme Court reversed on grounds that "it was an abuse of discretion to admit the record when an admission was available." *Id.* at 191, 117 S.Ct. 644.

### C.

However, some courts have relied upon *Old Chief* and extended it to preclude completely the introduction of prior conviction evidence to the jury where that evidence establishes a status element of the offense and a defendant offers to stipulate to such a conviction. For example, in *State v. Nichols,* 208 W.Va. 432, 541 S.E.2d 310 (W.Va.1999), *modified on other grounds by State v. McCraine,* 214 W.Va. 188, 588 S.E.2d 177, 182 (2003), the West Virginia Supreme Court stated that "when a defendant offers to stipulate to ... prior convictions *Old Chief* has provided the basis for some state courts to *preclude the mention of a prior conviction that is a status element of the underlying offense.*" *Id.* at 321 (emphasis added). Thus, that court held "that when a prior conviction(s) constitutes a status element of an offense, a defendant may offer to stipulate to such prior conviction(s)" and "[i]f a defendant makes an offer to stipulate to a prior conviction(s) that is a status element of an offense, the trial court must permit such stipulation and preclude the state from presenting any evidence to the jury regarding the stipulated prior conviction(s)." *Id.* at 323.

The West Virginia court reiterated this rule in *State v. Dews,* 209 W.Va. 500, 549 S.E.2d 694 (2001), where the defendant was charged with "a third offense [of] driving under the influence of alcohol (DUI)" and "[b]efore the trial began, the [defendant] stipulated to his prior DUI convictions and moved that the court not permit any reference to his prior DUI convictions to be made before the jury." *Id.* at 696. The motion was denied and consequently the "prior DUI convictions were mentioned at trial, in the presence of the jury, nine times[.]" *Id. Dews* held that a "criminal defendant's stipulation to a prior conviction status element of an offense ... is to be treated in the same fashion as other evidence that shows the status element, and is not to be mentioned to the jury." *Id.* at 698 (citation omitted). That court further opined that "the court should craft its remarks and instructions to the jury, including informing the jury of the charge against the defendant and the verdict form, in a fashion that omits reference to stipulated-to status elements of the offense, and that authorizes the jury to base its verdict upon those elements of the offense that are not stipulated to by the defendant." *Id.* (footnote omitted).

Other courts have adopted various approaches to whether prior conviction stipulations should be removed from the jury's consideration. In *State v. Saul,* 434 N.W.2d 572, 574 (N.D.1989), the defendant was charged "with driving or being in actual physical control of a motor vehicle while under the influence of intoxicating liquor" and that "within the past seven years, [the defendant] had three prior convictions [for the same offense.]" The North Dakota Supreme Court held that where the defendant, charged under enhancement provisions, stipulated to a prior conviction which was an element of the charge, the submission of evidence regarding the prior convictions constituted prejudicial and reversible error. *Id.* at 575.

That court further noted that although it is "the general rule that the prosecution is not bound by the defendant's offer to stipulate[,]" if "a defendant stipulates to the prior convictions ... he effectively removes that element of the crime from the charge, and we do not see any reason why evidence of the prior convictions should be submitted to the jury unless they are relevant to some disputed issue[.]" *Id.* at 575 (citations omitted).

The North Dakota Supreme Court reiterated that the trial court's "cautionary instruction [ (stating that the defendant's prior convictions may not be used to 'determin[e] the guilt or innocence of the [d]efendant on the present charge') ] may be a proper counterbalancing factor to the prejudice resulting from introduction of the prior convictions in the weighing in which the trial court must engage under Rule 403" in some cases, but that "there [was] no purpose in risking reliance on the cautionary instruction to alleviate the prejudicial effect of the prior convictions when the defendant ha[d] stipulated to them." *Id.* at 573 n. 2, 575.[10]

Similarly, in *State v. Berkelman*, 355 N.W.2d 394 (Minn.1984), cited by Respondent, the defendant was found guilty of the "gross misdemeanor offense of driving with a blood alcohol concentration of .10 or more within [five] years of a prior conviction under the DWI statute[.]" *Id.* at 395. The Minnesota Supreme Court concluded that the prior conviction was "an element of the offense of aggravated DWI, that the trial court erred in not letting [the] defendant use the stipulation procedure to remove the element from consideration by the jury, but that the error was not prejudicial." *Id.* Although it did not state explicitly, it appears that *Berkelman* determined that the error was not prejudicial based on a limiting instruction given by the trial court in its final instructions:

> Now, evidence has been introduced concerning an alleged prior conviction of the defendant for driving while under the influence. This evidence was received because I have ruled that such proof is an essential element of the offense charged in the complaint in this case. *You may not consider this evidence as evidence that the defendant was driving or had an alcohol concentration of more than 0.10 in his blood [on the present occasion.]*

*Id.*

Finally, in *Ross v. State*, 950 P.2d 587, 589 (Alaska Ct.App.1997), also relied upon by Respondent, "[t]he main issue raised [on] appeal [was] whether the existence of the defendant's two prior convictions is an element of the crime of felony DWI[.]" The Alaska Court of Appeals concluded that it was an element of the offense that must be submitted to the jury. The trial judge had determined that the State must prove prior convictions to the jury "beyond a reasonable doubt[,]" *id.* at 590, but that the "risk of prejudice could minimized if [the defendant] and the State stipulated to the bare facts of the prior convictions." *Id.* at 589. The Alaska court, in affirming this action stated that "we do not hold that the stipulation used in [the defendant's] case is the only correct method for dealing with the issue of the defendant's prior convictions[, but] . . . only that it is a permissible method, and that it was a fair method under the facts of [the defendant's] case." *Id.* at 591. However, *Ross* also stated that a bifurcated trial was the "reccomend[ed]" method of addressing the prior conviction issue. *Id.* at 592.

## XII.

As to the third question, Petitioner argues that, assuming the jury is told of the stipulation, (1) the court must give a limiting instruction both "prior to the introduction of

---

10. Respondent refers to *State v. Cardin*, 129 N.H. 137, 523 A.2d 105 (1987), in which case the defendant had previously been convicted of Driving While Intoxicated (DWI), was on trial for a subsequent DWI charge, and the prior DWI conviction was at issue in the offense. However, the *Cardin* court construed *the prior conviction as "not [being] . . . an element of the present charge, but . . . a predicate condition for enhancement of the sentence upon conviction for the present offense,"* and so is inapposite from the instant case. *Id.* at 106.

Likewise, in *People v. Hall*, 67 Cal.App.4th 128, 79 Cal.Rptr.2d 690 (Cal.Ct.App.1998), where the defendant "was charged with being a convicted person having [a] concealed firearm in [his] vehicle[,]" the California Appellate Court determined that the prior conviction constituted a sentencing factor, not an element of the offense, and as such the defendant could stipulate to the crime and the element should not have been sent to the jury. *Id.* at 134–35, 79 Cal.Rptr.2d 690. However, *Hall* concluded that the error was not prejudicial because "the court expressly instructed the jury that the evidence of [the defendant's] prior conviction was not to be considered for any purpose except to establish a necessary element of the crime charged; the jury was not to speculate regarding the nature of that prior conviction; and the jury was not to be prejudiced against [the defendant] because of such prior conviction." *Id.* at 136, 79 Cal.Rptr.2d 690.

the evidence *and* during the charge to the jury" to ensure the jury is not tainted by evidence of another crime committed by the defendant, (citing *Tavares v. State*, 117 Nev. 725, 30 P.3d 1128, 1133 (2001)), and in this case, "the [court] failed to do either"; (2) Respondent's "closing argument could invariably have inferred to the jury that [Petitioner] had a propensity to commit these violent crimes of abuse"; and (3) "[t]he [court's] failure to include a limiting instruction resulted in an attack on [Petitioner's] character and improperly bolstered Jennifer's credibility."

Respondent maintains that (1) "the [defense's failure to] request a limiting instruction regarding [Petitioner's] prior conviction at any time during trial . . . constitutes waiver," (2) "defense counsel's withdrawal of the proposed limiting instruction may have invited error[,]" (3) "[Petitioner] should be judicially *estopped* from raising this issue," (emphasis in original) [11] (4) "[e]ven if not deemed waived, [Petitioner's] substantial rights were not adversely affected[,] . . . [because Respondent] was duty-bound to introduce evidence of [Petitioner's] prior abuse convictions to the jury" (5) "the [court] . . . allow[ed] the convictions into evidence *in the most non-prejudicial manner*—through a trial stipulation[,]" (emphasis in original) (6) "[i]t is inconceivable that the jury used the stipulation to bolster . . . [Jennifer's] credibility, . . . as no evidence was adduced through the stipulation that she was the victim in the prior convictions[,]" and (7) "[Respondent] briefly mentioned the trial stipulation and only did in the context of showing that [Respondent]

met its burden of proving an essential element." [12]

The ICA did not express an opinion as to this issue.

## XIII.

### A.

 A limiting instruction is necessary when the jury may only consider particular evidence for one element of an offense but not for another.[13] For example, this court has

> recognize[d] that expert medical testimony regarding what the severity of a person's injuries would have been absent medical attention could be relevant to prove that a defendant committed the offense of attempted assault in the first degree by "intentionally engaging in conduct which was a substantial step in a course of conduct intended or known to cause" serious bodily injury. *See* HRS §§ 705–500(2) (1993), 707–710(1). *We further note that when such evidence is admitted to prove that a defendant committed the offense of attempted assault in the first degree, the defendant will be entitled to a limiting instruction, see [Hawaii Rules of Evidence (HRE)] Rule 105 [1993], to ensure that the jury understands that the evidence cannot be used to establish that "serious, permanent disfigurement" actually occurred.*

*State v. Meyers*, 112 Hawai‘i 278, 288–289, 145 P.3d 821, 831–832 (2006) (quoting *State v. Malufau*, 80 Hawai‘i 126, 130 n. 6, 906 P.2d 612, 616 n. 6 (1995)) (emphasis added) (brackets in original). A limiting instruction may

---

**11.** Under the disposition here, items 1–3 need not be discussed.

**12.** In reply, Petitioner argues: (1) "[r]egardless of whether the defense withdrew its request for a limiting instruction during the settlement . . . the [court] committed the error . . . before jury instructions were settled," (2) "[i]t is the [court's] ultimate responsibility and duty to properly instruct the jury even when the defense objects[,]" (citing *State v. Haanio*, 94 Hawai‘i 405, 410, 16 P.3d 246, 255, (2001)), (3) "[l]imiting instructions should be give [sic] prior to the introduction of the evidence *and* during the charge to the jury[,]" (citing *Tavares*, 30 P.3d at 1133), and (4) "the evidence of the prior convictions was un-

fairly and substantially prejudicial [inasmuch as t]he jury was never instructed as to the limited purpose of the prior convictions and was left to treat it as constituting bad character evidence."

**13.** Hawai‘i Rules of Evidence (HRE) Rule 105 provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Petitioner did not request a limiting instruction in this case.

also be necessary to prevent potential prejudice to a defendant. *See, State v. Konohia,* 106 Hawai'i 517, 528, 107 P.3d 1190, 1201 (App.2005) ("[A]ny potential prejudice resulting from arguing evidentiary matters in the jury's presence was cured by the trial judge's instructions to the jury.").

### B.

*State v. Green,* 493 So.2d 588, 590–91 (La. 1986), supports the position that where a prior conviction is admitted to prove an element of an offense, a jury instruction is required as to the limited purpose for which that evidence is to be considered. *Green* followed *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), which affirmed the constitutionality of Texas habitual offender provisions that allowed evidence of prior convictions to be submitted to the jury when limiting instructions were given. The Louisiana court determined that admitting such evidence in "a one-stage . . . trial procedure *would, in the absence of a mandatory limiting jury instruction, 'fall below the minimum level the Fourteenth Amendment will tolerate.'*" *Green,* 493 So.2d at 591 (quoting *Spencer,* 385 U.S. at 569, 87 S.Ct. 648 (Stewart, J., concurring) (emphasis added)).

> The United States Supreme Court in *Spencer v. Texas,* . . . upheld the constitutionality of a Texas recidivist statute which permitted the state to fully inform a jury, during a defendant's trial on the pending criminal charge, of the defendant's past convictions when the jury was also charged that such matters were to be considered only for the limited purpose of enhancement of punishment and not for deciding guilt or innocence. *It follows from the high court's rationale that a recidivist procedure is unconstitutional, when it allows evidence of defendant's past crimes to be admitted for punishment enhancement during the guilt determination trial, unless the procedure requires a jury instruction as to the limited purpose of the prior crime evidence.*

*Id.* at 590–91 (emphasis added). *Green* also explained that two United States Courts of Appeal expanded *Spencer* by holding that

admission of a prior conviction without a limiting instruction is so prejudicial that it constitutes plain error. *Id.* at 591 (citing *Dawson v. Cowan,* 531 F.2d 1374 (6th Cir. 1976); *Evans v. Cowan,* 506 F.2d 1248, 1249 (6th Cir.1974)).

In both *Dawson* and *Evans,* which involved the admission of prior convictions, the defendant failed to request a limiting instruction and the court did not give such an instruction *sua sponte. Dawson,* 531 F.2d at 1377; *Evans,* 506 F.2d at 1249. Nevertheless, the Sixth Circuit Court of Appeals, applying *Evans* and *Spencer,* concluded that *"where no limiting instruction was given . . . the prejudice to the defendant was so great that failure to give the instruction constituted plain error of constitutional magnitude, requiring relief even though the defendant did not request the instruction." Dawson,* 531 F.2d at 1377 (emphasis added).

In both *Dawson* and *Evans,* evidence of prior convictions was prejudicial to the defendant because such evidence could unduly influence a jury to conclude that the defendant is a "bad person," or more likely to have committed the offense, leading it to improperly convict the defendant based on those considerations. *Cf. Tavares,* 30 P.3d at 1131 (stating that "the principal concern with admitting bad acts is that the jury will be unduly influenced by the evidence, and thus convict the accused because it believes the accused is a bad person."). The potential for undue prejudice is so great that failure to give a limiting instruction with regard to prior convictions, even if the defendant has not requested one, "constitut[es] clear error." *Evans,* 506 F.2d at 1249.

### C.

We now adopt an approach specifically concerning the use of prior convictions to prove an element of a charged offense. As discussed above, the cases have generally adopted two initial steps in applying statutes aimed at recidivist conduct or habitual offenders. First, if a defendant decides to stipulate to the prior convictions, the trial court must accept the stipulation. Second, the trial court must engage defendant in a colloquy to confirm that defendant under-

stands his constitutional rights to a trial by jury and that his stipulation is a knowing and voluntary waiver of his right to have the issue of his prior convictions proven beyond a reasonable doubt.

These two requirements are widely established but thereafter approaches differ as to how the trial court utilizes the stipulation once it is accepted. To summarize, the trial court could: (1) exclude all evidence of the prior convictions from the jury; (2) inform the jury that defendant has stipulated to the prior convictions with an instruction that the jury must consider the prior convictions as conclusively proven, but that the jury may not consider the prior convictions for any purpose other than as conclusive proof of the particular requisite element of the offenses charged in the case; or (3) bifurcate the trial.

This court has already rejected the third approach. *See State v. Olivera*, 57 Haw. 339, 345, 555 P.2d 1199, 1203 (1976). In *Olivera*, the defendant appealed from several convictions including "possession of a firearm by a person convicted of a crime of violence." The defendant contended, *inter alia*, that "denial of his pre-trial motion [for a bifurcated trial] was error for which his conviction should be reversed." *Id.* The defendant had sought by means of pre-trial motion, "a bifurcated trial in which the jury would try the issue of whether the [defendant] possessed a firearm in one stage of the trial," and upon such finding, "would then inquire as to whether [the defendant] had been previously convicted of a crime of violence and return a verdict of guilty or not guilty thereon." *Id.* The defendant had also requested in his motion, an "order in limine barring the State from reading the indictment to the jury, insofar as it recite[d] that [the defendant] had previously been convicted of a crime of violence and from offering any comment or evidence upon such matter unless and until the jury had found that [the defendant] had possessed a firearm as charged in the indictment." *Id.*

This court noted that the "prior conviction which [the defendant] sought to keep from the jury [was] an element of the crime for which [the defendant] was charged[.]" *Id.* at 346, 555 P.2d at 1203. This court reached the same conclusion as Oklahoma courts which have "held that the previous conviction of a felony was a necessary element of the crime charged which should be pleaded and proven in the State's case in chief in a one stage proceeding." *Id.* at 347, 555 P.2d at 1204 (citing *Marr v. State*, 513 P.2d 324 (Okl.Cr.App.1973)). Accordingly, the defendant's conviction was affirmed. *Id.*

■ In choosing between the other approaches, we adopt a variation of the second approach. Under the chosen approach, the defendant should be allowed to stipulate to the fact of the required prior convictions.[14] This will serve the purpose of preventing the prejudice that would result from relating the details of the previous incidents to the jury. *See Old Chief*, 519 U.S. at 174, 117 S.Ct. 644 ("Fearing prejudice if the jury learns the nature of the earlier crime, defendants sometimes seek to avoid such an informative disclosure by offering to concede the fact of the prior conviction.") In this regard, we recognize, as did the Supreme Court in *Old Chief*, the potential for unfair prejudice to a defendant charged with a status offense if the jury knows "the name and nature" of the previous offenses. *Id.* (noting that "the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations ...."). We further note that the risk of tainting the jury verdict with evidence of prior convictions is of especial concern when the current charge is for the *same* crime of which the defendant was previously convicted. *Id.* at 184, 117 S.Ct. 644 ("Where a prior conviction was for ... one similar to ... charges in a pending case *the risk of unfair prejudice would be especially obvious ....*" (emphasis added)); *see also Dews*, 549 S.E.2d at 698 ("For a jury to learn of a prior [similar] offense by mention of the defendant's stipulation has the *same unfairly prej-*

14. Under our adopted approach, failure to allow the defendant to use the stipulation procedure would not be considered harmless error. *Contra, Berkelman*, 355 N.W.2d at 395 (holding that it was error to prevent defendant from stipulating to prior convictions, "but that the error was not prejudicial"). We decline to follow the Minnesota Supreme Court's holding inasmuch as the reasoning underlying the decision in *Berkelman* was not clearly stated.

*udicial effect as presenting the jury with other evidence of the offense ....")* (emphasis and brackets added).

■ Second, the jury should be instructed that the defendant has stipulated to this particular element of the charged offense to make it plain that this element is considered proven beyond a reasonable doubt.[15] The instruction must be carefully crafted to omit any reference to the "name or nature" of the previous convictions. *Dews,* 549 S.E.2d at 698. The court must also preclude any mention of the nature of Petitioner's prior convictions at any point during the trial, including arguments, presentation of evidence, and instructions. Eliminating the name and nature of the previous convictions from the jury's realm will prevent unfair prejudice to defendants charged under HRS § 709–906(7) and will notify the jury of all elements of the charged offense. Finally, the instruction should ensure that the prior convictions are not considered by the jury for any purpose other than conclusively establishing the "prior conviction(s)" element.

### D.

■ In the instant case, Petitioner's prior convictions were admissible only with respect to the element of whether Petitioner had two or more prior convictions, the last of which occurred within two years of the date of the charged offense in violation of HRS § 709–906(7). The jury was not to consider evidence of Petitioner's prior convictions with respect to whether Petitioner physically abused a household or family member on January 18, 2005, the specific date of the offense charged. Hence, the court abused its discretion when it denied Petitioner's request to prohibit Respondent from informing the jury of the nature of the prior convictions to which Petitioner had stipulated. This error was compounded by the failure to instruct the jury that the stipulation could be used only to prove the prior conviction element

and was not otherwise to be considered in relation to the current offense.

### XIV.

In conclusion, on remand, if Petitioner wishes to stipulate to the prior convictions, the court must accept his stipulation. The stipulation may be accepted only after engaging Petitioner in an on-the-record colloquy regarding Petitioner's constitutional rights, and ensuring that Petitioner is making a knowing and voluntary waiver of his right to have the prior convictions proven beyond a reasonable doubt and decided by a jury. If such a stipulation is accepted, the court must instruct the jury of the following: (1) conviction under HRS § 709–906(7) requires the prosecution to prove beyond a reasonable doubt the element that defendant has had at least two prior misdemeanor convictions, the last of which occurred within two years of the charged offense; (without indicating that the two prior convictions must be for abuse of a household or family member); (2) defendant has stipulated to at least two prior misdemeanor convictions, the last of which occurred within two years of the charged offense; (3) the stipulation is evidence only of the prior conviction element; (4) the prior conviction element of the charged offense must be taken as conclusively proven; (5) the jury is not to speculate as to the nature of the prior convictions; and (6) the jury must not consider defendant's stipulation for any other purpose.

### XV.

Based on the foregoing, the ICA's February 6, 2007 judgment is reversed, the court's September 13, 2005 judgment is vacated, and the case is remanded to the court for a new trial.

Dissenting Opinion by NAKAYAMA, J.

I respectfully dissent. Inasmuch as I believe the majority misapplies *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293 (1995),

---

**15.** We observe that *"[t]here is no bright-line rule"* for determining when (*i.e.,* before the evidence is introduced and/or at the conclusion of the trial) the trial court should issue a limiting instruction. *State v. Cordeiro,* 99 Hawai'i 390,

418–19, 56 P.3d 692, 720–21 (2002) (emphasis added) (citations omitted). The trial court must consider on a case-by-case basis when to issue the limiting instruction. *Id.*

when addressing Respondent's preservation argument, majority opinion at 13–14, 169 P.3d at 965–66, and the majority chooses to intrude on the adversarial system in order to resolve the issue of waiver of a fundamental right through a stipulation of facts, I would hold that the Intermediate Court of Appeals ("ICA") did not gravely err by affirming Petitioner's conviction.

The majority rejects the Respondent's assertion that Petitioner waived the admissibility issue of his counsel's stipulation because Petitioner failed to object. Majority opinion at 13–14, 169 P.3d at 965–66. In its rejection, the majority attempts to draw an inference of relevance in precedent between this case and *Tachibana*. In *Tachibana*, this court discussed which approach "will best protect defendant's rights while maintaining the integrity of the criminal justice system." 79 Hawai'i at 234, 900 P.2d at 1301. In rejecting the "demand" rule, this court "decline[d] to adopt a rule which places ... burdens on the exercise of a fundamental constitutional right[,]" inasmuch as "[c]ourts using the demand rule will not entertain a post-trial challenge based on the right to testify." 79 Hawai'i at 233–34, 900 P.2d at 1300–01. *Tachibana*, however, is inapposite insofar as the "three primary approaches" discussed by the majority, majority opinion at 11–12, 169 P.3d at 963–64, are approaches "that courts throughout the country have taken *when defendants have claimed that their attorneys deprived them of their right to testify.*"[1] 79 Hawai'i at 233, 900 P.2d at 1300 (block format and citation omitted) (emphasis added). No such claim has been made by Petitioner against his counsel in the instant case.

Moreover, contrary to its interpretation, the language emphasized and relied on by the majority illustrates the tenuous situation a defendant finds himself when his counsel takes away his constitutional rights and the defendant "may not know that an objection

must be made during trial or that right is forever lost." Majority opinion at 13, 169 P.3d at 965 (quoting and emphasizing certain portions of *Tachibana*, 79 Hawai'i at 234, 900 P.2d at 1301). Indeed, a defendant-client looks to his counsel to provide guidance and keep him informed as to what his rights are, and how best to proceed in exercising those rights. This relationship between attorney and client is a foundational principle of our rules of professional responsibility, which compels his counsel, as "advisor," to "provide[ ] a client with an informed understanding of the client's legal rights and obligations and explain[ ] their practical implications." Hawai'i Rules of Professional Responsibility ("HRPR") pmbl. 2 (2007).

A defendant's counsel has "the duty to inform a defendant of the existence of certain constitutional rights[,]" inasmuch as "a trial court can justifiably presume, based on a defendant's conduct or silence, that a defendant is aware of and has waived certain rights." *Tachibana*, 79 Hawai'i at 240, 900 P.2d at 1307 (Nakayama, J., dissenting) (citing *State v. Silva*, 78 Hawai'i 115, 890 P.2d 702 (App.1995); *State v. Savage*, 120 N.J. 594, 577 A.2d 455 (1990)). A court is not obligated to engage in a mandatory colloquy with every defendant to ensure that he, notwithstanding his counsel's silence or conduct, knowingly and intelligently waived each and every one of his constitutional rights. *Tachibana*, 79 Hawai'i at 241, 900 P.2d at 1308 (Nakayama, J., dissenting). It is instead primarily the obligation of counsel to advise a defendant on whether to waive his constitutional rights, and the tactical advantages and disadvantages of each choice. *Id.* ("For the court to discuss the choice with the defendant would intrude into the attorney-client relationship protected by the sixth amendment."); *see* HRPR pmbl. 2.

The majority's holding represents a logical progression in this court's continued intrusion into and erosion of this relationship,

---

1. Indeed, the defendant in *Tachibana* "frequently expressed his desire to testify" to his counsel during trial recesses, and his "defense team decided as a tactical matter that it would be best not to call Tachibana as a witness." 79 Hawai'i at 229, 900 P.2d at 1296. Being brought to its attention, the trial court found and concluded that "defense counsel's decision to rest Tachibana's case without presenting Tachibana as a witness, which was contrary to the wishes of Tachibana, violated Tachibana's right to testify in his trial." *Id.* at 239, 900 P.2d at 1306 (quotation marks and brackets omitted).

inasmuch as the gravity of the majority's opinions in both *Tachibana* and the instant case is that a court is better suited to protect the constitutional rights of a defendant than his own counsel—whether his counsel utters a word or not, and even if his counsel's utterance or silence directly infringes on his constitutional rights. Unlike the defendant's silence in *Tachibana*, defendant's counsel in the instant case stipulated to the prior convictions in a clever show of gamesmanship, which *sub silentio* implicated the defendant's constitutional right to have each element proven beyond a reasonable doubt.

While I share in the majority's decision that a limiting jury instruction should have been given, I must dissent from the majority's disposition because (1) the majority misapplies *Tachibana* in addressing Respondent's preservation argument, and (2) I decline to condone a course of conduct that encourages clever trial tactics and gamesmanship by counsel at the expense of protecting and preserving her client's constitutional rights. For the foregoing reasons, I would affirm the ICA's February 6, 2007 judgment, which affirms the family court of the second circuit's September 13, 2005 judgment of conviction.