**Electronically Filed
Supreme Court
SCWC-13-0002043
30-MAY-2018
09:22 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

TRACY SOUZA,
Petitioner/Defendant-Appellant.

SCWC-13-0002043

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0002043; CRIMINAL NO. 12-1-1028)

MAY 30, 2018

McKENNA, POLLACK, AND WILSON, JJ., WITH NAKAYAMA, J.,
DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

In <u>State v. Murray</u>, 116 Hawaiʻi 3, 169 P.3d 955 (2007), this court held that if a defendant offers to stipulate to the prior conviction element of a charged offense, the trial court must accept the stipulation. This appeal arises from a challenge by Tracy Souza asserting that the circuit court refused to accept his offer to stipulate to his prior felony

conviction, which constituted an element of an offense with which he was charged.  We hold that the manner in which the circuit court addressed Souza's offer to stipulate to the prior conviction element was inconsistent with our decision in <u>Murray</u>.  Because this error was not harmless beyond a reasonable doubt, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

On July 16, 2012, Souza was charged by felony information in the Circuit Court of the First Circuit (circuit court) with place to keep unloaded firearms other than pistols and revolvers, in violation of Hawaii Revised Statutes (HRS) § 134-24 (hereinafter "place to keep firearm"),[1] and ownership or

---

[1]     HRS § 134-24 (2011) provides in relevant part as follows:

        (a) Except as provided in section 134-5, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:

        (1) A place of repair;

        (2) A target range;

        (3) A licensed dealer's place of business;

        (4) An organized, scheduled firearms show or exhibit;

        (5) A place of formal hunter or firearm use training or instruction; or

(continued . . .)

possession prohibited of any firearm or ammunition by a person convicted of certain crimes, in violation of HRS § 134-7(b) (hereinafter "prohibited possession of firearm").[2]  Souza pleaded not guilty to the charges, and a jury trial was held.[3]

### A.    Proposed Stipulation

Prior to jury selection, the circuit court discussed with both parties the subject of a possible stipulation as to Souza's previous conviction of a felony offense.  The court noted that both the State and Souza drafted proposed stipulations but that an agreement had not been reached as to which version would be used at trial.  The court stated the following:

> After reviewing both of the stipulations, it's my view, that, absent a specific agreement by both of you, then the State would be perfectly within its right to call whatever witnesses they felt are necessary and relevant -- obviously it would be -- have to be approved and permitted by the Court -- to establish that element of a prior conviction.

---

(. . . continued)

> (6) A police station.

[2]    HRS § 134-7 provides in relevant part as follows:

> (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

HRS § 134-7(b) (2011).

[3]    The Honorable Rom A. Trader presided.

> And, so, with that, [defense counsel], has Mr. Souza arrived at any decisions as to whether or not he'll accept the State's version of the stipulation?

Defense counsel responded, "Yes," and indicated that he wished to make a record. Counsel stated that while the defense was seeking to exclude the naming of Souza's prior convictions, the State's stipulation included facts that were not elements of the offense of prohibited possession of firearm and therefore they were not relevant.[4] As an example, defense counsel cited paragraph 3 of the State's proposed stipulation--regarding Souza not having been pardoned of the prior conviction--as already covered by Souza's stipulation that he has a prior conviction. Counsel also pointed to paragraph 4 of the State's proposed stipulation--that Souza was prohibited from

---

[4] The record on appeal does not include Souza's proposed stipulation. The State's proposed stipulation provided, inter alia, as follows:

1. As of July 11, 2012, the Defendant, Tracy Souza, had been convicted of a felony offense in the State of Hawaii.

2. As of July 11, 2012, the Defendant, Tracy Souza, knew that he had been convicted of a felony offense in the State of Hawaii.

3. The Defendant, Tracy Souza, has not been pardoned for such felony offense.

4. As a result of this conviction, the Defendant, Tracy Souza, is prohibited from owning or possessing any firearms or ammunition.

5. As a result of this conviction, the Defendant, Tracy Souza, knew that he was prohibited from owning or possessing any firearms or ammunition.

owning or possessing firearms as a result of his prior conviction--as being a statement of law and not an element of the offense. Additionally, defense counsel referenced paragraph 5 of the State's proposed stipulation--that Souza knew he was prohibited from owning or possessing any firearms--as also not being an element of the prohibited possession of firearm offense. Souza requested that, even if the defense did not agree to the State's proposed stipulation, the State be precluded from presenting evidence as to these matters. Defense counsel continued as follows:

> My understanding is the State is proffering or would put up . . . Mr. Souza's former probation officer, to testify to the effect that Mr. Souza was instructed or informed or advised that he was prohibited from possessing. And, so, that not being relevant under 403 -- well, 401, 403, we'd ask that we not have to agree to that as well as the State not -- as well as the State be precluded from presenting that evidence.

Although the State acknowledged that pursuant to State v. Murray the defense had the right to stipulate to the name and nature of the offense, the State asserted that it still needed to prove that it was a Hawai'i court that had issued the prior judgment. The State indicated that it intended to provide such proof by entering a certified, sealed judgment of the conviction subject to redaction. Defense counsel disagreed with the State

5

that it was required to prove the jurisdiction of the court that rendered the prior judgment.[5]

The State also contended that it needed to prove that Souza knew he was prohibited from owning or possessing firearms. Thus, the State would not agree to Souza's proposed stipulation because it did not want to be precluded from offering evidence as to what the State believed were elements of the offense that the State was required to prove to obtain a conviction. The court then inquired of the State whether it believed that, absent the stipulation, it would be entitled under caselaw to introduce the matters contained in its stipulation, or alternately, whether it intended to present evidence of such matters even with the stipulation. The State responded that it did not want the situation to be cast in a light where Souza was forced to accept its proposed stipulation and if that was the case it would withdraw its proposed stipulation. The State again acknowledged that Souza had the right under Murray to stipulate to preclude the name and nature of the prior conviction. At the same time, the State contended that, absent a broader stipulation, it would need to introduce evidence of

---

[5]     The court indicated that it tended to agree with the defense as to its position on this issue. However, the jurisdictional fact was included in the stipulation that was read to the jury. See infra § I-C.

Souza's state of mind with respect to the firearm prohibition. The State continued,

> So . . . I would intend to call the probation officer, not to discuss the name and nature of the prior offenses but just to establish that he did go over the terms and conditions of that probation and they did include the fact that he was prohibited from owning or possessing the firearm.

Defense counsel disagreed that the State was required to prove that "Souza knew he was prohibited or even reckless about being prohibited from possessing" a firearm. Souza maintained that this state of mind is not an element of the offense of prohibited possession of firearm. And because knowledge or recklessness as to the statute's prohibition was not relevant to proof of the offense, defense counsel contended that the State should be precluded from calling the probation officer for such testimony.

The court stated that it seemed the language in the felony information did involve Souza's state of mind. Defense counsel responded that Souza's stipulation included his state of mind as to having been convicted but not that Souza knew he was prohibited from owning or possessing a firearm. The court responded as follows:

> THE COURT: Basically this is the situation, and if Mr. Souza, after discussing with you the pros and cons of the stipulation and the pros and cons of deciding not to agree to enter into the stipulation as proposed by the State -- and it's his choice -- if he decides that he -- the stipulation as proposed is unacceptable to him, the Court is certainly not going to do anything to try to persuade him or convince him that, you know, he should do that.

> That's entirely up to him. And so -- but if, however, he chooses, after thinking about it and talking to you about it, making a decision, and upon voir dire by the Court that that's what he wants to do, then the stipulation will stand as it is. So I'll give you some time to talk to him. But certainly prior to opening statement we'll reach a resolution on the stipulation.

Defense counsel asked the court whether it was ruling that "Souza's state of mind with regard to . . . [paragraphs] 4 and 5 . . . that he knew he was prohibited from owning or possessing firearms or ammunition, that the Court is of the belief . . . that that is relevant." The court responded, "Yes."

Following jury selection, the court asked the parties whether an agreement had been reached regarding the proposed stipulations. Defense counsel stated that "because of the court's rulings," Souza was going to stipulate to the five enumerated paragraphs that the State proposed although he originally had no desire to do so.

The court then conducted a colloquy, and Souza acknowledged that he agreed to the State's proposed stipulation. The court found that Souza voluntarily entered into the stipulation with the requisite knowledge and understanding.

### B. Trial Testimony

On July 11, 2012, Dennis Crail, a security agent for the Board of Water Supply, responded to a report of homeless people or trespassers on state property located at 2530 Likelike

Highway.[6]  While searching the property, Crail discovered a blue tent that was situated on Board of Water Supply land.  Crail testified that he was approximately thirty feet from the tent when he saw a male exit that tent.  The male had his back turned toward him, Crail stated, but the male later turned sideways, allowing Crail to see the side of his face.  Crail later identified the male as Souza.  Crail acknowledged that he had not seen Souza prior to the incident.

According to Crail, Souza was carrying in his hand what appeared to be a rifle case.  Crail observed Souza take something out of the case and hold it in his right hand; when Souza raised his hand, Crail could see the stock of a rifle.  Crail testified that he saw Souza hold the rifle for about three minutes.  Crail then retreated a safe distance and called 911.  Crail later learned that there were two other persons with Souza--a male and a female--but testified that he was sure he saw Souza with the rifle.

Brianna Lincoln-Chong, who was with Souza on the day he was arrested, testified that she and Souza had arrived at the wooded area on Likelike Highway earlier that day.  Souza went to

_____

[6]     Crail testified that the state property at 2530 Likelike Highway had none of the following: a target range for firearms, a place of repair for firearms, a licensed firearm dealer's place of business, an organized scheduled firearm show or exhibit, a place of formal hunter or firearm use training, and a police station.

check hunting traps, and then she and Souza hiked to a campsite. When the police arrived, Souza was asleep. Chong stated that Souza never had the rifle in his possession during the entire time from when she arrived at the campsite until John Wilcox arrived. Chong explained that Wilcox asked her if she had seen a case for the rifle and that Wilcox had the rifle in his hand at that time.[7]

Chong acknowledged that in her statement to police she wrote that only Souza had possession of the rifle and that the rifle was brought out when she and Souza left for the hike and put back into the case when they reached the campsite. However, she explained that when she made the statement, she was scared and felt threatened by the possibility of going to jail. Chong testified that she had been handcuffed and held for questioning and that she was not allowed to leave until she made a statement. She stated that she told the police that she did not know whose rifle it was and did not initially include in the statement anything about Souza holding it. Chong testified that the police made her add at the end of her statement that Souza

_____

[7] The State also presented the testimony of Honolulu Police Department (HPD) officers who responded to the reported incident (but did not view the alleged carrying), an HPD detective who interviewed Crail, HPD personnel who examined the rifle and who kept records of permits or licenses to carry firearms, and an employee of the Board of Water Supply who testified that the property at 2530 Likelike Highway is state property.

had possessed the rifle.[8]  Because she had never been in trouble or been arrested before, Chong said, she "just cooperated and did whatever [the police] wanted [her] to do" in order to leave the police station.  Chong acknowledged that Souza is a family friend and that she did not want to testify because she felt she could be the reason for Souza going to jail.

John Wilcox testified that he and Souza had found the rifle in the bushes the day earlier when they were pig hunting.  Wilcox stated he had picked up the rifle and put it in the bushes where he and Souza were camping.

The next day when Wilcox arrived at the campsite, Souza was asleep in the tent.  Wilcox testified that he retrieved the rifle from the bushes.  A little while later, he heard tires screeching, saw the police officers, ran back to the tent, and woke Souza up.  Wilcox asked Souza what he should do with the rifle, and Souza said to get rid of it.  Wilcox put the rifle back in the bushes where he had placed it earlier.  He testified that Souza never handled the rifle and that he had never seen Souza pick it up.  He further testified that he understood it was possible that he could get in trouble by

---

[8]     The final two sentences in Chong's written statement read, "John [Wilcox] never had the gun in his possession.  Only Tracy [Souza] did."

testifying.  And although Souza was his friend, Wilcox explained he was not making up a story to help Souza.

On cross-examination, Wilcox indicated that the rifle did not have a magazine, nor was it loaded when it was found. Wilcox stated that at no point was the rifle fired either on the day it was found or on the following day.  Wilcox acknowledged that he did not have a license or permit to carry or acquire the rifle.  Wilcox also related that he had known Souza for a little over a year and they were friends and did side jobs together.

### C.    Stipulation and Jury Instructions

At the end of the State's case-in-chief, the circuit court informed the jury that the State and Souza had reached a stipulation and that the stipulated facts were true and accurate and would be admitted into evidence in lieu of other evidence or testimony.  The court then read the stipulation as follows:

> It is hereby stipulated to by and between Defendant Tracy Souza . . . and the State of Hawaiʻi . . . that the following facts are true and accurate and will be admitted into evidence during trial of the above-entitled matter in lieu of other evidence or testimony.
> 1) As of July 11, 2012, the defendant, Tracy Souza, had been convicted of a felony offense in the state of Hawaii.
> 2) As of July 11, 2012, the defendant, Tracy Souza, knew that he had been convicted of a felony offense in the state of Hawaii.
> 3) The defendant, Tracy Souza, has not been pardoned for such felony offense.
> 4) As a result of this conviction, the defendant, Tracy Souza, is prohibited from owning or possessing any firearms or ammunition.
> 5) As a result of this conviction, the defendant, Tracy Souza, knew that he was prohibited from owning or possessing any firearms or ammunition.

The court then advised the jury that one of the elements of prohibited possession of firearm is referred to as the "prior conviction element" and requires the State to prove that Souza was previously convicted of a felony.  The court explained that the State and Souza had stipulated to this element, meaning that both sides agreed that Souza has a prior felony conviction.  The court stated that based on this stipulation the jury must accept as proven beyond a reasonable doubt the prior conviction element.[9]

At the conclusion of the evidence, the court instructed the jury on the elements of the offense of prohibited

---

[9]     The court's instruction as to the stipulation stated as follows:

> One of the elements of the alleged offense in Count II of Ownership or Possession of Any Firearm or Ammunition by a Person Convicted of Certain Crimes requires the Prosecution to prove beyond a reasonable doubt that Defendant Tracy Souza had been previously convicted of a felony.  This element is referred to as the "prior conviction element" of the offense.  The Defense and the Prosecution have stipulated to this element, which means that both sides agree that Defendant has a prior felony conviction.  Based on this stipulation, you must accept as proven beyond a reasonable doubt the "prior conviction element."  You must not consider the stipulation for any other purpose.  You must not speculate as to the nature of the prior conviction.  Do not consider this evidence for any other purpose.  You must not use this evidence to conclude that because the defendant at another time has committed a crime that he is a person of bad character and, therefore, must have committed the offenses charged in this case.  In considering the evidence for the limited purpose of which it has been received, you must weigh it in the same manner as you would all other evidence in this case and consider it along with all other evidence in this case.

The instruction was given again, substantially verbatim, at the close of evidence.

possession of firearm. The court reiterated that the State and Souza had stipulated to the prior conviction element, meaning that both sides agreed that Souza has a prior felony conviction, and that this element must be accepted as proven beyond a reasonable doubt.

The jury found Souza guilty of both charged offenses. Souza was sentenced to five years of probation in each count, with the terms to run concurrently. As part of Souza's probation sentence, the court imposed concurrent jail terms of thirty days with credit for time served. Souza filed a notice of appeal to the Intermediate Court of Appeals (ICA) from the Judgment of Conviction and Probation Sentence (judgment).

## II.  ICA PROCEEDINGS

In his opening brief, Souza contended that he offered to stipulate to the prior conviction element of the prohibited possession of firearm charge but that the circuit court refused to accept his stipulation unless he agreed to the State's proposed stipulation.[10]

Souza explained that he and the State discussed his intent to admit to his prior felony conviction and to his knowledge of that conviction, but that they differed as to

___

[10]    Souza raised three other points of errors, none of which were raised in his application for a writ of certiorari, and thus they are not addressed.

14

agreeing to other matters in the stipulations.  Souza noted that the State made it clear that if he did not accept its stipulation it would call a witness to establish that Souza knew his prior conviction prohibited him from owning or possessing firearms.  Souza added that the State informed the court that it would also seek to admit a redacted version of the certified judgment of the prior felony conviction to prove that the conviction occurred in the State of Hawai'i.  Souza argued that these facts were not elements of the offense and were unduly prejudicial.

Souza maintained that the court admonished him that if he did not accept the State's proposed stipulation, the State would be free to call any witnesses it felt were necessary to establish the prior felony conviction.  The circuit court, Souza continued, conditioned the acceptance of his offer to stipulate to other evidence requested by the State.  Souza argued that the court's error was not harmless and that such error infected the jury's verdict as to both of the charged offenses.  Accordingly, Souza requested that the judgment be vacated and the case remanded for a new trial.

In its answering brief, the State responded that neither it nor the circuit court forced Souza to accept the State's proposed stipulation.  The State maintained that both

15

parties had their own versions of the stipulation but that they did not reach an agreement as to either version. The State argued that the point of contention was whether the stipulation should include that Souza was prohibited from owning or possessing firearms as a result of his prior conviction and that he knew he was prohibited from such ownership or possession. The State contended that it was required to show that Souza acted with the requisite state of mind to prove the prohibited possession of firearm charge. The State concluded that it was Souza's choice to agree to the State's stipulation and that there was nothing in the record indicating that Souza would have been prevented from stipulating to his prior conviction had he not accepted the State's proposed stipulation.

In a summary disposition order (SDO), the ICA affirmed the circuit court's judgment.[11] The ICA determined that the transcript of proceedings contradicted Souza's contention that he was forced to decide between accepting the State's proposed stipulation and not being allowed to stipulate. The ICA indicated that the parties and the circuit court did not discuss whether the court would accept Souza's stipulation. However, the ICA stated that "they did discuss that in the event that

_____

[11] The ICA's SDO can be found at State v. Souza, NO. CAAP-13-0002043, 2017 WL 2797598 (Haw. App. June 28, 2017).

Souza's stipulation was entered, whether the State would be allowed to call Souza's probation officer to establish that Souza knew that he was not allowed to possess firearms." Accordingly, the ICA concluded that the circuit court complied with the Murray decision.

## III. DISCUSSION

### A. Failure to Comply With the Murray Requirements

A defendant has a due process right to have each element of an offense proven beyond a reasonable doubt; this right is protected by the federal and state constitutions and HRS § 701-114. State v. Murray, 116 Hawaiʻi 3, 10, 10 n.8, 169 P.3d 955, 962, 962 n.8 (2007) (citing U.S. Const. amend. XIV, § 1; Haw. Const. art. I, § 5). Thus, where a prior conviction is an essential element of the offense charged, the State must prove the prior conviction beyond a reasonable doubt. Id. at 10, 169 P.3d at 962.

In this case, Souza was charged with violating HRS § 134-7(b), which provides, "No person who . . . has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor." Hence, to establish that Souza violated HRS § 134-7(b), the State was required to prove, inter alia, that Souza

17

was previously convicted of a felony, any crime of violence, or an illegal sale of any drug.

A defendant may offer to stipulate to the prior conviction element of a charged offense. If the defendant does so, "the court must accept [the] stipulation." Murray, 116 Hawai'i at 21, 169 P.3d at 973. The stipulation may be accepted only after the court has engaged the defendant in an on-the-record colloquy regarding the defendant's constitutional rights and has ensured that the defendant "is making a knowing and voluntary waiver of his right to have the prior convictions proven beyond a reasonable doubt and decided by a jury." Id. Following acceptance of the stipulation, the court must instruct the jury, inter alia, that the defendant has stipulated to the prior conviction element of the charged offense to make it clear that this element is conclusively proven beyond a reasonable doubt. Id. "The instruction must be carefully crafted to omit any reference to the 'name or nature'" of the prior conviction, and "[t]he court must also preclude any mention of the nature of [the defendant's] prior convictions at any point during the trial." Id.

In this case, Souza had a prior conviction that constituted an element of the prohibited possession of firearm charge. Thus, under Murray, Souza was allowed to stipulate to

the prior conviction element, which stipulation "the court must accept." 116 Hawai'i at 21, 169 P.3d at 973. Souza contends that the circuit court violated this requirement by refusing to accept his offer to admit to the prior conviction element. The ICA disagreed, stating that "the Circuit Court did not explicitly discuss whether the court would accept Souza's stipulation." The transcript of proceedings contradicts this holding, however.

The State and Souza each drafted proposed stipulations regarding the prior conviction element. The circuit court informed the parties that it had received and reviewed both the State's and Souza's stipulations and would allow the State to call witnesses to prove the conviction element if the parties did not reach an agreement:

> After reviewing <u>both</u> of the stipulations, it's my view, that, <u>absent a specific agreement by both of you</u>, then the <u>State would be perfectly within its right to call whatever witnesses they felt are necessary and relevant</u> -- obviously it would be -- have to be -- have to be approved and permitted by the Court -- <u>to establish that element of a prior conviction</u>.

(Emphases added.) The circuit court thus stated that only an agreement by both counsel as to the stipulation to be given would preclude the State from calling witnesses to establish the element of the prior conviction. By expressing that the State would be permitted to call witnesses if an agreement was not reached, the court was stating that it would not accept Souza's stipulation to the conviction element "absent an agreement by

19

both" parties.  In other words, the circuit court declined to accept Souza's stipulation on its own, without the State's consent--a ruling that Murray squarely forecloses.  See 116 Hawai'i at 21, 169 P.3d at 973 ("[T]he court must accept [the] stipulation.").

Souza further argues that the circuit court conditioned his right to admit the prior conviction element on his agreement to enter into the form of stipulation proposed by the State, which contained additional information to which he did not wish to stipulate.  As discussed, the court stated at the outset that, absent an agreement between the State and Souza, the State would be entitled to call witnesses to establish the prior conviction element of the prohibited possession of firearm charge.  Under Murray, Souza was entitled to admit to the prior conviction element and preclude the introduction of evidence to prove this element of the charged offense.  This entitlement exists whether or not the State agrees to the form of the stipulation in which the defendant admits to the prior conviction.  Instead of informing Souza of this right, the court told Souza he could either reach an agreement with the State as to the form of the stipulation or the State could call necessary and relevant witnesses to prove the element of the prior conviction.

The court then compounded its error by asking defense counsel the following question: "And, so, with that . . . has Mr. Souza arrived at any decisions as to whether or not he'll accept the State's version of the stipulation?"  Souza, however, was under no obligation to elect whether to accept the State's version of the stipulation.  The circuit court should only have confirmed Souza's intention to admit to the prior conviction, and once Souza so indicated, that should have been the end of the discussion.

The court did not correct its misstatements; as a result, its subsequent statements to defense counsel aggravated the approach that the court had followed.

> THE COURT: Basically this is the situation, and if Mr. Souza, <u>after discussing with you the pros and cons of the stipulation</u> and the <u>pros and cons of deciding not to agree to enter into the stipulation as proposed by the State</u> -- and it's his choice -- if he decides that he -- the stipulation as proposed is unacceptable to him, the Court is certainly not going to do anything to try to persuade him or convince him that, you know, he should do that. That's entirely up to him.  And so -- but if, however, he chooses, after thinking about it and talking to you about it, making a decision, and upon voir dire by the Court that that's what he wants to do, <u>then the stipulation will stand as it is</u>.  So I'll give you some time to talk to him.  But certainly prior to opening statement we'll reach a resolution on the stipulation.

(Emphases added.)  Thus, the court gave Souza two choices: "not to agree to enter into the stipulation as proposed by the State," which had pro and cons, or accept the State's stipulation, which also had pros and cons.  But, as discussed, under <u>Murray</u>, the choice should <u>not</u> have been whether to accept

or not accept the State's proposed stipulation in light of the "pros and cons." Instead, under the circumstances, Souza had an absolute right to have <u>his</u> offer to admit to the prior conviction accepted by the court.[12]

The circuit court's misapprehension of the procedures adopted in <u>Murray</u> was underscored when it informed Souza that he could reject the State's stipulation (which as the court had previously explained essentially meant that the State could call whatever witnesses it wished to prove the prior conviction), or accept the State's stipulation without any modification ("then the stipulation <u>will stand as it is</u>"). (Emphasis added.) But the court should have either modified the State's proposed stipulation in a manner that was consistent with this court's decision in <u>Murray</u> or, alternatively, accepted Souza's proposed stipulation. The circuit court therefore erred when, instead of accepting Souza's proffered stipulation to the prior conviction element as required by <u>Murray</u>, it presented Souza with the choice of accepting or not accepting the State's stipulation.

---

[12] The State asserted that it was Souza's choice whether or not to enter into the stipulation in the State's proffered form. The mere assertion that Souza was not required to agree to the form of stipulation that the State submitted did not alter the court's non-acceptance of Souza's proposed stipulation.

**B.    The Procedure Utilized by the Circuit Court Compromised the Protections Adopted in <u>Murray</u>**

In <u>Murray</u>, we recognized the inherent difficulties that arise in providing a fair trial to a defendant who is charged with an offense of which a previous criminal conviction forms a requisite element.  On the one hand, a defendant possesses a constitutional due process right to be convicted only when the State proves every element of an offense beyond a reasonable doubt, including that of a prior conviction.  <u>State v. Murray</u>, 116 Hawai'i 3, 10, 169 P.3d 955, 962 (2007).  On the other hand, the introduction of evidence regarding a defendant's previous crimes injects undue prejudice into the proceedings because it may lead the jury to make its decision on an improper basis, such as the belief that the defendant is a bad person with criminal inclinations.  <u>Id.</u> at 19, 169 P.3d at 971.

To resolve this tension, we held that a defendant has an unconditional right to make a knowing and voluntary waiver of the requirement that a previous conviction be proven beyond a reasonable doubt.  <u>Id.</u> at 21, 169 P.3d at 973.  By exercising this unconditional right, a defendant may admit to the element and remove the previous conviction from contention, ensuring that the jury is not exposed to potentially prejudicial evidence about the nature of the previous offense.  <u>Id.</u>  If the waiver is knowing and voluntary, the court must accept the stipulation

unconditionally.  Id.  This approach protects the defendant's constitutional due process right to a fair trial to the greatest extent possible while minimizing the likelihood that the jury will improperly consider the details of a previous crime as it relates to the defendant's character.

Here, the Murray stipulation was used by the circuit court as a basis to make evidentiary rulings not applicable to such a stipulation in a manner that exposed the jury to information unrelated to the defendant's prior conviction.  In addition, because this extraneous information was contained in a stipulation, the jury was required to treat it as conclusive. Thus, rather than striking a balance between competing interests, the approach taken in this case contravened the protections adopted in Murray.

### 1. The stipulation procedure was improperly combined with evidentiary rulings to determine the scope of the stipulation.

The circuit court departed from the procedures required by Murray by combining preliminary evidentiary rulings with its consideration of Souza's stipulation.  Souza argued that several paragraphs contained within the State's proposed stipulation were not elements of the prohibited possession of

firearm charge, were irrelevant, and were prejudicial.[13]  The circuit court disagreed, stating that the paragraphs were relevant and even went so far as to specify which witnesses it might permit to testify on the matter if Souza did not accept the stipulation.[14]

The court's evaluation of admissibility should have been separate and distinct from the only determination at issue in Souza's Murray stipulation--namely, whether Souza knowingly and voluntarily admitted the prior conviction element of the prohibited possession of firearm charge.  Murray required that the court unconditionally accept Souza's admission of the prior conviction element if Souza so agreed to it.  116 Hawai'i at 21, 169 P.3d at 973.  All other issues were immaterial to the

---

[13]    Specifically, Souza argued against paragraphs three, four, and five.  Paragraph three stated the following: "The Defendant, Tracy Souza, has not been pardoned for [the previous] felony offense."  Paragraph four read as follows: "As a result of [his prior] conviction, the Defendant, Tracy Souza, is prohibited from owning or possessing any firearms or ammunition."  Paragraph five stated as follows: "As a result of [the prior] conviction, the Defendant, Tracy Souza, knew that he was prohibited from owning or possessing any firearms or ammunition."  It is noted that the court correctly did not instruct the jury that the lack of a pardon, the fact of the prohibition, and Souza's knowledge of the prohibition were elements of the prohibited possession of firearm offense, despite the inclusion of these paragraphs in the State's stipulation.

[14]    The State explained that, if Souza did not agree to the State's proposed stipulation, it intended to call Souza's probation officer to prove that Souza was aware that he was prohibited from owning or possessing firearms.  The circuit court ruled that Souza's state of mind with respect to the prohibition was relevant to the prohibited possession of firearm offense and that it would permit the State to call the witnesses the State deemed necessary to prove the matter if Souza did not agree to the State's stipulation.

25

analysis.  By combining the Murray ruling with unrelated evidentiary matters, the circuit court intermingled the determinations, compromising Souza's fundamental right to remove his prior conviction from consideration.

> ## 2.  The contents of the State's stipulation far exceeded the parameters of a Murray stipulation.

In Murray, the defendant was charged with a recidivist abuse offense for which the prosecution was required to prove, inter alia, "that the violation was Petitioner's 'third or any subsequent offense that occur[ed] within two years of a second or subsequent conviction.'"  116 Hawai'i at 7, 169 P.3d at 959 (alteration in original) (quoting HRS § 709-906(7) (Supp. 2004)).  We held that this requirement of a previous conviction within the specified time frame was an attendant circumstance that was an element of the offense and that the defendant had an unconditional right to stipulate to that previous conviction element.  Id. at 8, 21, 169 P.3d at 960, 973.

Here, the court instructed the jury that Souza was charged with a crime for which the prosecution needed to prove the following elements:

> [1) T]he defendant intentionally or knowingly possessed or controlled the object in question; and 2) that the object in question was a firearm; and 3) that at the time he possessed or controlled the object in question Defendant believed, knew, or recklessly disregarded a substantial and unjustifiable risk that the object was a firearm; and 4) that prior to July 11, 2012, the defendant was convicted of committing a felony offense; and 5) that at the time he possessed or controlled the object in question the

26

> defendant believed, knew, or recklessly disregarded the
> substantial and unjustifiable risk that he had previously
> been convicted of a felony offense.

Under Murray, Souza had a right to stipulate to the final two
elements in order to prevent the jury from hearing about the
name and nature of his previous conviction.  That right could
not be conditioned on Souza stipulating to any other
information.  The State's proposed stipulation was far more
extensive.  The stipulation read as follows:

> 1.   As of July 11, 2012, the Defendant, Tracy Souza, had
> been convicted of a felony offense in the State of Hawaii.
> 2.   As of July 11, 2012, the Defendant, Tracy Souza, knew
> that he had been convicted of a felony offense in the State
> of Hawaii.
> 3.   The Defendant, Tracy Souza, has not been pardoned for
> such felony offense.
> 4.   As a result of this conviction, the Defendant, Tracy
> Souza, is prohibited from owning or possessing any firearms
> or ammunition.
> 5.   As a result of this conviction, the Defendant, Tracy
> Souza, knew that he was prohibited from owning or
> possessing any firearms or ammunition.

Only the first two paragraphs were covered by our Murray
holding.[15]  The State argued that the remaining paragraphs
constituted elements of the offense, which was incorrect.  But
this is ultimately beside the point--even other elements of the
offense are beyond the scope of a Murray stipulation.

---

[15]     It is noted that paragraphs 1 and 2 are not entirely encompassed
by the decision in Murray.  Both paragraphs indicate that Souza was
previously convicted in the State of Hawai'i.  Souza correctly argued to the
circuit court that the jurisdiction of the court that rendered the judgment
of the prior conviction is not an element of the prohibited possession of
firearm offense.  In relevant part, HRS § 134-7(b) provides that "[n]o person
who . . . has been convicted in this State or elsewhere of having committed a
felony . . . shall own, possess, or control any firearm."  (Emphasis added.)

The harm caused by the error was realized when the court read the stipulation to the jury in its entirety. In other words, the result of the Murray stipulation here was to expose the jury to more prejudicial information rather than less.

Instead of taking Souza's prior conviction out of contention, the stipulation made it a central focus and further communicated to the jury that Souza had not been pardoned and was aware that his possession of a firearm was prohibited. And, as Souza pointed out to the circuit court, the stipulation confused the issues by including a statement of law--that Souza's conviction prevented him from owning or possessing firearms. In sum, the stipulation increased the likelihood that the jury would make its decision on an improper basis--the precise opposite of what a Murray stipulation is intended to accomplish.

C.  **The Circuit Court's Error Was Not Harmless Beyond a Reasonable Doubt**

Given the circumstances of this case, it cannot be said that the circuit court's error in not accepting Souza's stipulation was harmless beyond a reasonable doubt. "In applying the harmless beyond a reasonable doubt standard[,] the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of

28

might have contributed to the conviction." State v. Mundon, 121 Hawai'i 339, 368, 219 P.3d 1126, 1155 (2009) (alteration in original) (quoting State v. Balisbisana, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996)).

This is not a case "[w]here there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt." State v. Rivera, 62 Haw. 120, 127, 612 P.2d 526, 532 (1980). The evidence adduced at trial established that Crail was the only witness who identified Souza as the person in possession of the rifle. Crail admitted that he had not had any contact with Souza prior to the underlying incident in this case. Crail further testified that he was approximately thirty feet away from the tent when he saw Souza carrying the rifle, that Souza had his back turned toward him, and that he later saw only the side of Souza's face.

The evidence also included testimony that there were two other persons with Souza on the day in question, Chong and Wilcox. Chong testified that Souza never had the rifle with him or in his possession during the entire time from when she arrived at the campsite until Wilcox arrived.[16] At a later

---

[16] Although this testimony was inconsistent with the written statement Chong initially made to police, which was admitted into evidence,

(continued . . .)

point, Chong testified, Wilcox asked her--while holding the rifle in his hand--whether she had seen the case for that rifle. Wilcox testified that the rifle was found the day before Souza's arrest near where he and Souza were camping. He stated that Souza never handled the rifle and that he had never seen Souza pick it up and look at it. Wilcox testified that he was the person who had held the rifle--even though he understood it was possible that his testimony could get him in trouble.

Clearly, on this record, there is a reasonable possibility that the court's error in not accepting Souza's offer to stipulate might have contributed to Souza's conviction for prohibited possession of firearm. The State's stipulation conclusively informed the jury that Souza had not been pardoned for his prior offense and that he was aware that his prior conviction prohibited him from owning or possessing any firearms. The jury may have thus drawn negative inferences about Souza's character from this information, including that he was a person who was not worthy of a pardon and that he willfully violated the law as he knew his conduct was a criminal

_____

(. . . continued)

Chong testified that she was frightened when she made the earlier statement because she had never before been in any kind of legal trouble and that the police pressured her into blaming Souza by threatening her with a firearm possession charge.

offense.[17]  Such negative inferences would clearly have been

prejudicial to Souza in the jury's evaluation of the evidence in

this case.

There is also a reasonable possibility that

impermissible speculation may have contributed to Souza's

conviction for the place to keep firearm offense.  With respect

to both charged offenses in this case, the only contested issue

was whether it was Souza who was in possession of the firearm.

Thus, the same negative inferences about Souza's character that

applied to the offense of prohibited possession of firearm,

including that Souza was a person who did not deserve to be

pardoned and that he deliberately failed to respect the law as

he knew his conduct was unlawful, may have equally impacted the

jury's evaluation of Souza with regard to the place to keep

firearm charge.  As Souza maintains on certiorari, "it cannot be

---

[17]  Souza correctly argued to the circuit court that paragraph 4 of the State's stipulation--"As a result of this conviction, the Defendant, Tracy Souza, is prohibited from owning or possessing firearms or ammunition"--is a statement of law.  This statement of law was improperly included in a factual stipulation, outside the allowable scope of Murray, and its presentment as a statement of fact potentially confused the jury as to the nature of its fact-finding role.  Additionally, by specifying that "Defendant, Tracy Souza" was prohibited from engaging in the conduct with which he was charged, the stipulation likely increased the perceived gravity of the charged conduct, which was also prejudicial to Souza.

said that the trial court's error did not infect the jury's verdict as to both of the charged offenses in this case."[18]

The circuit court's instruction that accompanied the stipulation was not sufficient to cure this potential prejudice. The instruction stated only that the jury was prohibited from considering the stipulation and "this evidence" for any purpose besides establishing the prior conviction element. It made no reference to the underlying facts proven by the factual stipulation, and it did not specifically address the ways in which the stipulation was flawed, which included that Souza had not been pardoned and that he was aware that his prior conviction prohibited him from owning or possessing a firearm. A jury instruction must be specific to the harm resulting from the error to function as a curative, and a general, boilerplate instruction will not serve to eliminate the prejudice. See State v. Basham, 132 Hawai'i 97, 111, 319 P.3d 1105, 1119 (2014) ("Additionally, while the court properly instructed the jury on accomplice liability, that instruction did not cure the prosecutor's misstatements of the law, where no specific curative instruction relating to the misstatements was given.");

---

[18] The State did not file a response to Souza's application for a writ of certiorari, nor did it make an argument in its answering brief to the ICA that distinguished between the two charged offenses as to prejudice.

State v. Espiritu, 117 Hawai'i 127, 143, 176 P.3d 885, 901 (2008) ("While the court here did properly instruct the jury . . ., that instruction could not cure Respondent's misstatements of the law, where no specific curative instruction relating to the misstatements was given.").

In addition, when the misstatement of the law comes from the court as here, "the court, at least tacitly, place[s] its imprimatur upon the" improper statement. State v. Schnabel, 127 Hawai'i 432, 453, 279 P.3d 1237, 1258 (2012) (brackets omitted) (quoting State v. Pacheco, 96 Hawai'i 83, 96, 26 P.3d 572, 585 (2001)). A jury is presumed to follow a court's instructions precisely because a jury is likely to perceive a court's statements of the law as the accurate law to apply. When the court does not unequivocally correct its own misstatement, a contrary instruction simply introduces confusion as to the law governing the jury's determination without rectifying the error.

Lastly, although there is normally a presumption that the jury follows all of the trial court's instructions, see State v. Klinge, 92 Hawai'i 577, 592, 994 P.2d 509, 524 (2000), that presumption is refuted here. Prior to instructing the jury regarding the stipulation, the court stated, "There are five material elements of the offense of Ownership or Possession

Prohibited of any Firearm by a Person Convicted of Certain

Crimes."  The court instructed the jury that two of those

elements were that 1) prior to possessing a firearm, Souza was

convicted of a felony offense, and 2) when he possessed the

firearm, Souza "believed, knew, or recklessly disregarded the

substantial and unjustifiable risk that he had been convicted of

a felony offense."  The stipulation in this case included facts

satisfying <u>both</u> of these requirements.[19]  However, the court's

instruction regarding the stipulation, which was given both at

the close of the State's case-in-chief and immediately prior to

closing arguments, stated as follows:

> <u>One</u> of the elements of the alleged offense in Count II of Ownership or Possession of Any Firearm or Ammunition by a Person Convicted of Certain Crimes requires the Prosecution to prove beyond a reasonable doubt that Defendant Tracy Souza had been previously convicted of a felony.  <u>This element is referred to as the "prior conviction element" of the offense.</u>  The Defense and the Prosecution have stipulated to this element, which means that both sides agree that Defendant has a prior felony conviction.  Based on this stipulation, you must accept as proven beyond a reasonable doubt <u>the "prior conviction element."</u>  <u>You must not consider the stipulation for any other purpose.</u>  You must not speculate as to the nature of the prior conviction.  <u>Do not consider this evidence for any other purpose.</u>

(Emphases added.)  The instruction did not reference Souza's

state of mind with respect to his prior conviction, which the

---

[19]  As stated, the stipulation provided inter alia that, "As of July 11, 2012, the defendant, Tracy Souza, had been convicted of a felony offense in the state of Hawaii" and, "As of July 11, 2012, the defendant, Tracy Souza, knew that he had been convicted of a felony offense in the state of Hawaii."

jury had been instructed was a separate element the State was required to prove in order to obtain a conviction.  And, because Souza's state of mind as to his conviction was included in the factual stipulation, the State did not present any other evidence from which the jury could have inferred that Souza's state of mind was proven beyond a reasonable doubt.

In other words, there was no evidence adduced at trial regarding Souza's state of mind as to his prior conviction other than the stipulation.  But to find Souza guilty of prohibited possession of firearm, the jury was required to find that Souza believed, knew, or recklessly disregarded the substantial and unjustifiable risk that he had a prior felony conviction, and the court had instructed the jury that this was a different element than the prior conviction element.  The factual stipulation contained this requisite fact, and it was the only evidence from which a jury could have possibly found that the state of mind for the prior conviction element was satisfied. The court's instruction, however, informed the jury that the stipulation could not be used for this purpose because it could be used only for the prior conviction element, which the court had instructed the jury was separate from the state of mind element as to his prior conviction.  Thus, the jury necessarily disregarded the court's instruction and considered the underlying facts in the stipulation substantively because the

jurors would not have been able to convict Souza had they followed the court's instruction as delivered.[20]  Accordingly, the verdict as to the prohibited possession of firearm charge rebuts the presumption that the jury followed the circuit court's limiting instructions regarding the stipulation in this case.

The dissent agrees that the circuit court erred by refusing to accept Souza's stipulation and requiring Souza to accept or reject the State's proposed stipulation without modification.  Dissent at 4.  However, the dissent argues that there is no reasonable possibility that the court's errors contributed to Souza's convictions.  Dissent at 4.

The dissent contends that the case turned on the jury's evaluation of the credibility of Crail, Chong, and Wilcox's respective testimonies.  Dissent at 15.  Although acknowledging that the jury could have drawn impermissible inferences regarding Souza's character from the facts in the State's unmodified stipulation, the dissent concludes that Souza's character was irrelevant to Crail, Chong, and Wilcox's credibility and thus unlikely to have affected the jury's determination.  Dissent at 15.

---

[20]     Given our disposition of this case, we do not address whether this logical inconsistency would amount to reversible error in its own right.

36

However, our holding in Murray sought to preclude the unnecessary introduction of evidence from which a jury might make negative inferences about a defendant's character precisely because such evidence is not relevant to any matter of consequence and invariably prejudicial to a defendant. See State v. Murray, 116 Hawai'i 3, 21, 169 P.3d 955, 973 (2007) ("Eliminating the name and nature of the previous convictions from the jury's realm will prevent unfair prejudice to defendants . . . ."); Kaeo v. Davis, 68 Haw. 447, 454, 719 P.2d 387, 392 (1986) ("Unfair prejudice 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" (quoting Advisory Committee's Note to Federal Rules of Evidence Rule 403)). Similarly, evidence concerning other crimes, wrongs, or acts is generally inadmissible under Hawaii Rules of Evidence (HRE) Rule 404(b) because it is largely irrelevant, and "every variety of 'unfair prejudice'" implicated under HRE Rule 403 "is present when an accused's prior crimes are sought to be used against her." Addison M. Bowman, Hawaii Rules of Evidence Manual § 404-3 (2016) (citing State v. Kassebeer, 118 Hawai'i 493, 507, 193 P.3d 409, 423 (2008); State v. Arceo, 84 Hawai'i 1, 23-24, 928 P.2d 843, 865-66 (1996)).

As the dissent acknowledges, the jury could have drawn negative inferences about Souza's character from the facts included in the State's stipulation.  Dissent at 4, 15.  The risk that the jury would decide the case on the basis of these unfavorable inferences about Souza's character rather than upon the witnesses' credibility, or that the jury would make unreasonable inferences as to the credibility of the witnesses based on Souza's perceived bad character, is exactly why the evidence was unfairly prejudicial and should not have been admitted at trial.

The dissent responds that, unlike the name and nature of a prior conviction, the wrongfully admitted evidence in this case was not "of such an overwhelmingly prejudicial nature that" it could "affect a jury's determination of a case, irrespective of the nature of the issues and arguments upon which the parties relied at trial."  Dissent at 12-16.

As an initial matter, the dissent understates the gravity of the prejudicial information included in the stipulation, which informed the jury, inter alia, that

> 1) As of July 11, 2012, the defendant, Tracy Souza, had been convicted of a felony offense in the state of Hawaii.
> 2) As of July 11, 2012, the defendant, Tracy Souza, knew that he had been convicted of a felony offense in the state of Hawaii.
> 3) The defendant, Tracy Souza, has not been pardoned for such felony offense.

(Emphasis added.) Members of a jury unfamiliar with the executive pardon power may have inferred that a pardon is generally given in due course following a convicted defendant's successful rehabilitation, and there was a reason that Souza had not received one. Certainly, jurors instructed by the court that it was "true and accurate" that Souza had not been pardoned for his felony offense would consider this fact important for their consideration. Jurors thus may have concluded that Souza had not been pardoned for his felony conviction because he did not merit receiving a pardon based on his character or his subsequent conduct. In this respect, the stipulation suggested an ongoing, present failure by Souza to redeem himself, not merely past misconduct for which Souza had already paid his debt to society. And, unlike a prior conviction introduced through the normal evidentiary process, Souza was unable to offer any evidence demonstrating context or mitigating circumstances explaining the prejudicial facts (including the rarity with which pardons are granted) because the facts were established by stipulation. See 83 C.J.S. Stipulations § 5 (2017) ("A stipulation bars a party who enters into it from adducing evidence to dispute the stipulated facts or the circumstances surrounding them.").

Further, the negative effect of each portion of the stipulation must be considered cumulatively. As stated, the

39

stipulation also informed the jury that Souza was prohibited from possessing a firearm and knew he was prohibited from possessing a firearm, increasing the perceived wrongfulness of the conduct underlying the firearm-related charges against Souza.  The harm in this case of the improperly admitted information is particularly manifest when the various aspects are compounded.  See State v. Pemberton, 71 Haw. 466, 473, 796 P.2d 80, 83-84 (1990) ("We find that a number of these acts, while not individually sufficient to warrant reversal, cumulatively prejudiced Defendant to the extent of denying him a fair trial.").

Specific negative inferences aside, the dissent's reasoning misapprehends the basis for our decision in Murray. To be sure, this court determined that evidence of the name and nature of a defendant's previous conviction is overwhelmingly prejudicial, and we accordingly prescribed the stipulation procedure that a defendant must be allowed to utilize to preclude its introduction.  Murray, 116 Hawai'i at 20-21, 169 P.3d at 972-73.  We did not suggest, however, that other negative character evidence must rise to this level for its admittance to constitute harmful error.  Indeed, the dissent appears to formulate a new alternative standard for evaluating the harmfulness of negative character evidence when the

defendant's character is not closely related to arguments or issues in the case, requiring a showing of overwhelming prejudice in such circumstances.[21]

But irrelevant negative character evidence undermines the presumption of innocence and places a thumb on the scales of justice regardless of what issues the case properly turns upon. Admitting such evidence implies that the defendant "is not entitled to the presumption of innocence throughout trial and deliberations." State v. Mara, 98 Hawai'i 1, 16, 41 P.3d 157, 172 (2002) (quoting United States v. Doyle, 130 F.3d 523, 538 (2d Cir. 1997)); accord United States v. Myers, 550 F.2d 1036, 1044 (5th Cir. 1977) (holding bad character evidence is not admissible because "[a] concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is"). Further, the admission of prejudicial character evidence that is irrelevant may color a juror's view of other evidence that is relevant, bolstering the government's case and diminishing the defendant's such that the government's burden of proof is effectively reduced. A juror "may take it upon herself to make a premature evaluation of the case" and

---

[21] Because the use of character evidence is restricted under our evidentiary rules, a defendant's character is actually related to the jury's determination in only limited circumstances.

conclude that she "need not hold the Government to its strict burden [because] she is otherwise convinced of the accused's guilt." Mara, 98 Hawai'i at 16, 41 P.3d at 172.

In sum, the admission of irrelevant character evidence invites jurors to make a premature evaluation of the case, erodes the presumption of innocence, and raises the potential that such evidence will be used in deciding the case based on irrelevant considerations of who the defendant is and not what the defendant has done. See id. In light of the evidentiary record, it cannot be concluded beyond a reasonable doubt that such impermissible speculation by the jury did not contribute to Souza's conviction.[22] Thus, we vacate the circuit court's judgment as to both convictions and remand the case for further proceedings.

## IV. CONCLUSION

The circuit court in this case did not accept Souza's offer to admit to his prior conviction. The court instead required Souza to either accept or reject the State's proposed stipulation without modification, which included facts that were

---

[22] We stated in Murray that the "failure to allow the defendant to use the stipulation procedure would not be considered harmless error." 116 Hawai'i at 20 n.14, 169 P.3d at 972 n.14. Because the harm from the court's error was manifest in this case, we do not address whether a court's failure to accept a defendant's Murray stipulation to a prior conviction is structural error that is per se harmful.

not elements of prohibited possession of firearm and that were prejudicial to Souza.  If Souza accepted the proffered stipulation, it would have the opposite effect that a <u>Murray</u> stipulation is intended to accomplish, making it more rather than less likely that the jury would decide the case on an improper basis.  But if Souza rejected the State's proposed stipulation, the court indicated that the State would then be allowed to call witnesses to prove Souza's prior conviction which would have the effect of introducing irrelevant facts through potentially prejudicial testimony.  Neither option conformed to <u>Murray</u>.  The circuit court's error was not harmless beyond a reasonable doubt.

Accordingly, we vacate the ICA's August 4, 2017 Judgment on Appeal and the circuit court's June 18, 2013 Judgment of Conviction and Probation Sentence and remand the case for further proceedings consistent with this opinion.

William H. Jameson, Jr.
for petitioner

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

